**Roosevelt HOUSTON, Jr., a minor by next friend Roosevelt HOUSTON, Sr., and Victor Houston, Plaintiffs,**

**v.**

**The CITY OF ATHENS, ALABAMA; Bill Davis, Harlan Mitchell; and Russ Morgan, Defendants.**

**No. CV 86–HM–5427–NE.**

United States District Court, N.D. Alabama, Northeastern Division.

Dec. 5, 1986.

Curtis M. Simpson, Florence, Ala., for plaintiffs.

Jerry Batts, Sherrill & Batts, Athens, Ala., Dennis Riley, Morring, Schrimsher & Riley, Huntsville, Ala., for defendants.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

The above entitled civil action is before the Court upon the defendant City of Athens' 12(b)(6) motion to dismiss plaintiffs' complaint, as last amended on October 20, 1986.[1]

Plaintiffs' original complaint filed on August 8, 1986 is set out in the attached appendix to the within order which is expressly made a part hereof. Counts II (claim against City under respondeat superior doctrine for actions of its police officers) and IV (claim against City, County and motel under conspiracy theory for illegal arrest and malicious prosecution of plaintiffs) thereof contain the only claims for relief asserted by plaintiffs against the defendant municipality. Neither of these counts state a claim upon which relief can be granted and this Court's October 16, 1986 Order herein so held.

By their October 20, 1986 amendment plaintiffs *add* (emphasis supplied) the fol-

---

1. Under date of October 16, 1986 the Court entered Order herein granting the 12(b)(6) motion to dismiss of defendant City of Athens, Alabama directed to Counts II and IV of plaintiffs' original complaint, and dismissed such counts, with leave granted plaintiffs to amend their complaint with respect to such claims within 10 days, if they so elected.

lowing allegations to Count II of their complaint: [2]

On or about August 31, 1985 at the premises of the Town and Country Motel in Athens, Alabama the defendants Bill Davis, Harlan Mitchell, and Russ Morgan while acting in their official capacity as police officers for the City of Athens, Alabama did arrest the plaintiffs Victor Houston and Roosevelt Houston, Jr., and place the plaintiffs in the Limestone County jail. Plaintiffs further allege that the plaintiff Victor Houston was charged with disorderly conduct and resisting arrest and said charges were dismissed or otherwise nol prossed. Plaintiffs allege that the plaintiff Roosevelt Houston, Jr., was found delinquent by the Limestone County Juvenile Court as a consequence of the arrest by the Defendants Bill Davis, Harlan Mitchell and Russ Morgan.

Plaintiffs allege that the arrest of the plaintiffs by the defendants Russ Morgan, Harlan Mitchell, and Bill Davis was an unlawful seizure by the City of Athens, Alabama done in violation of the plaintiffs rights as secured by the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

Wherefore plaintiffs demand judgement against the City of Athens, Alabama in the amount of $250,000.

As so amended, amended Count II against the defendant municipality now reads:

2.) The plaintiff Victor Houston, is a black male citizen of the United States under the age of nineteen residing at 705 Browns Ferry Street, Athens, Alabama.

3.) The plaintiff Roosevelt Houston, Jr. is a black male citizen of the United States under the age of nineteen residing at 705 Brown Ferry Street, Athens, Alabama.

4.) The next friend Roosevelt Houston, Sr. is a black male citizen of the United States over the age of nineteen residing at 705 Browns Ferry Street, Athens, Ala-

bama and is the father of the plaintiffs Victor Houston and Roosevelt Houston, Jr.

5.) At all times material herein, defendants, the City of Athens was a municipal corporation of the State of Alabama, and was the employer of the defendants Bill Davis, Harlan Mitchell, and Russ Morgan. Defendant City of Athens, provided each of the individual defendants Bill Davis, Harlan Mitchell, and Russ Morgan with an official badge and identification card which designated and described its bearer as a police officer of said city's police department. The City of Athens is the municipal corporation in whose name the individual defendants Bill Davis, Harlan Mitchell, and Russ Morgan performed all acts and omisions alleged here.

8.) On or about the 31st day of August 1985 at the premises of the Town and Country Motel in Athens, Alabama, the defendants Bill Davis, Harlan Mitchell, and Russ Morgan, separately and in concert, acted under the color of law statutes, ordinances, regulations of the State of Alabama, and the County of Limestone and the City of Athens to illegally deprive the plaintiffs of rights, privileges, and immunities secured to the plaintiffs by the Fourteenth Amendment and the laws of the United States, to wit the defendants Bill Davis, Harlan Mitchell, and Russ Morgan did illegally arrest and physically assault and batter the plaintiffs Victor Houston and Roosevelt Houston, Jr. causing severe injury, pain, and suffering to said plaintiffs.

## COUNT II

9.) Plaintiffs incorporate by reference all allegations in paragraph 1 through 8 and alleges further that at all times material to this complaint. The defendants Bill Davis, Harlan Mitchell, and Russ Morgan were servants and agents of the

---

**2.** Presumably plaintiffs have abandoned the Count IV claim asserted in their original complaint. This claim was dismissed by the Court's October 16, 1986 Order with leave granted to amend within 10 days, if plaintiffs so elected. Plaintiffs did not so elect.

City of Athens, so that their acts are imputed [sic] to the City of Athens.

On or about August 31, 1985 at the premises of the Town and Country Motel in Athens, Alabama the defendants Bill Davis, Harlan Mitchell, and Russ Morgan while acting in their official capacity as police officers for the City of Athens, Alabama did arrest the plaintiffs Victor Houston and Roosevelt Houston, Jr., and place the plaintiffs in the Limestone County jail. Plaintiffs further allege that the plaintiff Victor Houston was charged with disorderly conduct and resisting arrest and said charges were dismissed or otherwise nol prossed. Plaintiffs allege that the plaintiff Roosevelt Houston, Jr., was found delinquent by the Limestone County Juvenile Court as a consequence of the arrest by the Defendants Bill Davis, Harlan Mitchell and Russ Morgan.

Plaintiffs allege that the arrest of the plaintiffs by the defendants Russ Morgan, Harlan Mitchell, and Bill Davis was an unlawful seizure by the City of Athens, Alabama done in violation of the plaintiffs rights as secured by the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

Wherefore plaintiffs demand judgement against the City of Athens, Alabama in the amount of $250,000.

A reasonable construction of amended Count II leads to the conclusion that plaintiffs are here seeking to establish section 1983 liability against the defendant City of Athens, Alabama for an alleged unreasonable seizure of and alleged excessive force on the persons of plaintiffs Roosevelt Houston, Jr. and Victor Houston allegedly committed by Athens Police Officers Bill Davis, Harlan Mitchell and Russ Morgan while acting in their respective official capacities and within the line and scope of

their employment, all in alleged violation of plaintiffs' rights secured by the Fourth Amendment[3] and Fourteenth Amendment[4] to the United States Constitution.

## FOURTH AMENDMENT

### UNREASONABLE SEIZURE

The initial issue before the Court in evaluating the Fourth Amendment unreasonable seizure claim *against the defendant municipality* is whether plaintiffs have alleged the elements of an unreasonable seizure.

■ The United States Supreme Court in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), noted: "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person." Under that standard, it is apparent from amended Count II of the complaint that a seizure of the persons of plaintiffs clearly occurred. A seizure, however, is not unconstitutional unless it is "unreasonable." In *Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1502 (11th Cir.1985), the Eleventh Circuit, quoting from *Garner, supra*, 471 U.S. at 1699, 105 S.Ct. at 1699, stated:

Reasonableness is to be determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the instrusion." (citation omitted). In conducting this balancing test, we are to consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 599, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

---

**3.** The fourth amendment provides in relevant part that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated." In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court recognized that a violation of the fourth amendment

gives rise to a private cause of action under § 1983.

**4.** The only potential basis for plaintiffs' recovery under the Fourteenth Amendment and under the pleaded facts of this case is substantive due process. See *Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1499–1501 (11th Cir.1985).

■ In the instant case the Court has difficulty in ascertaining from the four corners of amended Count II whether the alleged illegal arrest and alleged assault and battery were sufficiently serious to be actionable under the Fourth Amendment. Since the additional allegation is made that the alleged assault and battery caused severe injury, pain and suffering to plaintiffs, the Court will accept these facts as pleaded to be true (for purpose of 12(b)(6) ruling) and resolve them in the light most favorable to the plaintiff. See authorities, infra. Thus construed, the Court will proceed on the assumption that plaintiffs have alleged sufficient facts in amended Count II to state an actionable Fourth Amendment claim against the defendant police officers. This holding, however, is a narrow one, confined only to the pleadings and is not to be construed in any wise as an indication of how the Court will rule after the "probata" is applied to the "allegata." At that juncture the burden of proof rests upon plaintiffs to prove the essential elements of their Fourth Amendment claim by a preponderance of the evidence. Neither does this limited ruling purport to answer the issue of whether amended Count II states a claim against the defendant City of Athens upon which relief can be granted. That particular issue will be later addressed herein.

## SUBSTANTIVE DUE PROCESS

### FOURTEENTH AMENDMENT

■ The nature of a substantive due process claim in the police abuse context was given broad outline in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), in which the Supreme Court held inadmissible incriminating evidence which had been obtained by subjecting the suspect to a stomach pump. As the Court explained, substantive due process is violated when the government engages in actions which "offered those canons of decency and fairness which express the notions

of justice of English-speaking peoples even toward those charged with the most heinous offenses." 342 U.S. at 169, 72 S.Ct. at 208. The Court conceded at that time that "[t]hese standards of justice are not authoritatively formulated anywhere as though they were specifics," *id.,* and concluded only that substantive due process is violated by state conduct that "shocks the conscience" or constitutes force that is "brutal" and such as "to offend even hardened sensibilities." *Id.* at 172–73, 72 S.Ct. at 209–10. The Eleventh Circuit in *Gilmere, supra,* quoted approvingly from the seminal case of *Johnson v. Glick,* 481 F.2d 1028 (2nd Cir.1973), *cert. denied* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324, which developed a more definite standard for identifying substantive due process violations. There the Second Circuit noted that the violations which give rise to a substantive due process claim are necessarily more egregious than those which give rise to a simple tort action. In Judge Friendly's words:

Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033. The predecessor to the Eleventh Circuit adopted the *Johnson v. Glick* factors as the guiding standard for substantive due process claims, see *Williams v. Kelley,* 624 F.2d 695, 697 (5th Cir.1980), *cert. denied* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391; *Hamilton v. Chaffin,* 506 F.2d 904, 909 (5th Cir.1975).[5]

---

5. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

■ While plaintiffs' amended Count Two must indeed be classified as inartful pleading, to say the least, this Court again accepts the facts as pleaded to be true for 12(b)(6) motion purposes and resolves them in the light most favorable to plaintiffs. It is, of course, possible that the alleged beating of plaintiffs by the city police officers occurred "with little or no provocation" and that "the blows were not delivered in a good faith effort by the police officers to control plaintiffs, but rather out of initiation at [their] initial resistance." If later supported by the record, these findings would suffice to make out a substantive due process violation under both *Johnson* and *Rochin.* See *Gilmere,* 774 F.2d at 1501. With this extremely liberal construction of amended Count II, the Court concludes that plaintiffs have asserted a claim for unreasonable seizure against the defendant city police officers sufficient to withstand a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Whether this amended Count II states a claim for unreasonable seizure against the defendant City of Athens under *Monell* and its progeny raises other issues hereinafter decided.

### POSTAGE STAMP PLEADING

Under the settled law of this Circuit when considering whether to grant or deny a 12(b)(6) motion to dismiss a complaint or count thereof for failure to state a claim *the court must accept the facts as pleaded to be true* and resolve them in the light most favorable to the plaintiff. The motion to dismiss should not be granted unless it appears to a certainty, "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 702–703 (11th Cir.1985); *Bradberry v. Pinellas County,* 789 F.2d 1513 (11th Cir.1986); *Kadivar v. Stone,* 804 F.2d 635, 637 (11th Cir.1986). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is ... exceedingly low." *Id.,* 769 F.2d at 703.

### 12(b)(6) MOTION OF DEFENDANT MUNICIPALITY

■ The question now before the Court is whether the allegations of amended Count II of plaintiffs' complaint sufficiently alleges *as against the defendant municipality* a substantive due process claim under the Fourteenth Amendment and/or a Fourth Amendment claim of unreasonable seizure? Starting with the undeniable premise that the defendant City of Athens cannot be held liable for the alleged unconstitutional actions of the defendant city police officers solely upon *respondeat superior, Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipal liability must be predicated on more than a respondeat superior theory), the Court proceeds to examine amended Count II to determine whether it contains an allegation or allegations that the city police action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the municipality's officers or whether there are allegations in such amended count that such constitutional deprivations were visited upon plaintiffs pursuant to municipal governmental "custom." *Id.* at 690–91, 98 S.Ct. at 2035–36. As Justice Brennan wrote for the court in *Monell:*

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.,* at 694, 98 S.Ct. at 2037. As observed by the Eleventh Circuit in *Gilmere,* 774 F.2d at 1503, although *Monell* established that the basis for municipal liability could be found in either "policy" or "custom", the Supreme Court expressly declined to clarify the nature of the showing required from the plaintiff to implicate the municipality. The Court deemed it better to defer "further development of this action to an-

other day." 436 U.S. at 695, 98 S.Ct. at 2038.[6]

In *City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court rejected the approach that a single constitutional violation by a municipal employee can suffice to establish custom or policy. The plaintiff in *Tuttle* alleged that a police officer's use of excessive force deprived her decedent of life without due process of law. The plaintiff proved only a single instance of unconstitutional action by a non-policymaking employee of the city. There both the plurality and dissenting justices agreed that an isolated shooting by a police officer cannot, by itself, suffice to prove the existence of a policy or custom. However, Justice Brennan there wrote, joined by Justices Marshall and Blackman: "A § 1983 cause of action is available for the first victim of a policy or custom that would forseeably and avoidably cause an individual to be subjected to deprivation of a constitutional right as it is for the second and subsequent victims." *Tuttle,* 471 U.S. at 832, 105 S.Ct. at 2441.

In *Pembaur v. City of Cincinnati,* — U.S. —, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Petitioner, a physician and the proprietor of a clinic in Cincinnati, Ohio, that provided medical services primarily to welfare recipients, was indicted by a grand jury for fraudulently accepting payments from state welfare agencies. During the grand jury investigation, subpoenas were issued for the appearance of two of petitioner's employees. When the employees failed to appear, the Assistant County Prosecutor obtained capiases for their detention. But when two county Deputy Sheriffs attempted to serve the capiases at petitioner's clinic, he barred the door and refused to let them enter the part of the clinic where the employees presumably were located. Thereafter, Cincinnati police officers, whom petitioner had called, appeared and told petitioner to allow the Deputy Sheriffs to enter. Petitioner continued to refuse. The Deputy Sheriffs then called their superior who told them to call the County Prosecutor's Office and to follow his instructions. The Deputy Sheriffs spoke to the Assistant Prosecutor assigned to the case. He in turn conferred with the County Prosecutor, who told him to instruct the Deputy Sheriffs to "go in and get" the employees. The Assistant Prosecutor relayed these instructions to the Deputy Sheriffs. After the Deputy Sheriffs tried unsuccessfully to force the door, city police officers obtained an axe and chopped down the door. The Deputy Sheriffs then entered and searched the clinic but were unable to locate the employees sought. Although petitioner was acquitted of the fraud charges, he was indicted and convicted for obstructing police in the performance of an authorized act. His conviction was upheld by the Ohio Supreme Court. Petitioner then filed a damages action in Federal District Court under 42 U.S.C. § 1983 against the county, among other defendants, alleging that the county had violated his rights under the Fourth and Fourteenth Amendments. The District Court dismissed the claim against the county on the ground that the individual officers were not acting pursuant to the kind of "official policy" that is the predicate for municipal liability under *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018. The Court of Appeals affirmed, holding that petitioner had failed to prove the existence of a county policy because he had shown nothing more than that on "this one occasion" the Prosecutor and the Sheriff decided to force entry into petitioner's clinic.

Justice Brennan delivered the opinion of the Court with respect to Parts I, II–A, and II–C, concluding that:

6. In *Pembaur v. City of Cincinnati,* — U.S. —, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), Justice Brennan, delivering the opinion of the Court except as to Part II–B, described the holding of *Monell* as follows: "... the Court concluded

that municipal liability under 42 U.S.C. § 1983 is limited to deprivation of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature....'" 436 U.S. at 691, 98 S.Ct. at 2036.

1. The "official policy" requirement of *Monell* was intended to distinguish acts of the *municipality* from the acts of the municipality's *employees*, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible. *Monell* held that recovery from a municipality is limited to acts that are, properly speaking, "of the municipality," *i.e.*, acts that the municipality has officially sanctioned or ordered. With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. If the decision to adopt a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

2. It was error to dismiss petitioner's claim against the county. Ohio law authorizes the County Sheriff to obtain instructions from the County Prosecutor. The Sheriff followed the practice of delegating certain decisions to the Prosecutor where appropriate. In this case, the Deputy Sheriffs received instructions from the Sheriff's Office to follow the orders of the County Prosecutor, who made a considered decision based on his understanding of the law and commanded the Deputy Sheriffs to enter petitioner's clinic. That decision directly caused a violation of petitioner's Fourth Amendment rights. In ordering the Deputy Sheriffs to enter petitioner's clinic to serve the capiases on the employees, the County Prosecutor was acting as the final decisionmaker for the county, and the county may therefore be held liable under § 1983.

Justice Brennan, joined by Justice White, Justice Marshall, and Justice Blackmun, concluded in Part II–B that not every decision by municipal officers automatically subjects the municipality to section 1983 liability. The fact that a particular official has discretion in the exercise of particular functions does not give rise to municipal liability based on an exercise of that discretion unless the official is also responsible, under state law, for establishing final governmental policy respecting such activity. Municipal liability under section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

In *Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495 (11th Cir.1985), the sister of a decedent (shot and killed by Atlanta police officers) brought a section 1983 action against the police officers, their supervisors, and the city. The district court after bench trial found the police officers and the city liable but not the officers' supervisors. The district court held that: (1) both police officers were liable under section 1983 for beating Patillo, the decedent; (2) Police Officer Sampson was liable under § 1983 for shooting Patillo; (3) the city was liable under section 1983 for training Police Officer Sampson in a grossly negligent manner; (4) the police officers' supervisors were not liable because the plaintiff had failed to prove an "affirmative link" between the supervisors' conduct and Patillo's injuries as required by *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); and (5) the plaintiff's state law claims either were frivolous or would result in damages that would duplicate those already awarded under section 1983. A panel of the Court of Appeals reversed in part. The reversal by the panel was based upon two grounds: (1) *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), precluded the plaintiff's claims against the police officers because state tort remedies were available to provide redress for the beating and shooting; (2) the finding of liability against the city cannot be predicated on negligence but rather requires proof that the constitutional violations resulted from policies or customs actually developed or affirmatively sanctioned by the city's policymakers. It upheld the district court on the supervisory liability issue and remanded for consideration of the state law assault and battery claims in light of its decision to vacate the

paralleled section 1983 claims. *Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894 (11th Cir.1984), *on reh'g.* 774 F.2d 1495 (11th Cir.1985).

In writing to the issue of the city's liability for the police officers' conduct the en banc *Gilmere* court observed that the panel had reversed the district court on the ground that the district court had used an improperly low standard for determining municipal liability, adding that the en banc court too reversed the district court but for different reasons. After discussing what it considered to be the implication and import of *Monell* the en banc *Gilmere* court stated:

> The district court attempted to clarify the meaning of the [*Monell*] Court's terminology by concluding that municipal liability could be established by a showing that the city exhibited "gross negligence" or "deliberate indifference" in failing to take measures to prevent the unconstitutional actions of its employees. Then applying that standard to the facts before it (footnote omitted), the Court determined that the plaintiff had met her burden of proof by showing that the city had negligently failed to give Sampson adequate psychological testing or to retrain him sufficiently upon his return to the police force in 1978 (footnotes omitted). In reversing the district court, the panel rejected the lower court's gross negligence standard. In the panel's view, the city could be held liable only if plaintiff produced evidence that the constitutional violators' actions had actually been initiated, or at least implicitly ratified, by those representing official policy.

The cases from this circuit which were cited by the panel do not clearly support the standard of affirmative official ratification which it articulated (footnote omitted) and cases from other circuits are in direct conflict (footnote omitted). There exists, therefore, substantial disagreement as to whether gross negligence can suffice to establish municipal liability. We find it unnecessary at this time to state the rule to be followed by this circuit, however, as we find that plaintiff has failed to make out a case even under the gross negligence standard. At most she established that the city failed to train one single policeman properly in the appropriate methods of avoiding the use of deadly force. Even if such failure could be said to be "the moving force of the constitutional violation," as required by *Monell, see Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436 U.S. at 695, 98 S.Ct. at 2038), the plaintiff's proof did not in any case satisfy *Monell's* further requirement that the failure resulted from a custom that was "so permanent and well settled" as to have "the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036 (footnote omitted). Indeed, the evidence showed that the city had substantially modified its police training procedures subsequent to Sampson's initiation as a policeman in 1974 and that his failure to receive further training upon being rehired in 1978 was an anomaly resulting from his prior service on the police force. Accordingly, we reverse the district court's holding that the city is liable to the plaintiff under § 1983.

Finally, we address plaintiff's claims against various of the police officers' supervisors, including Maynard Jackson, the mayor, Lee Brown, the public safety commissioner, and George Napper, the chief of police. The district court found for these defendants on the ground that the plaintiff had failed to establish the existence of an "affirmative link" as required by *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), between the death of Patillo and the action or inaction of any of the three supervisors.

We agree. There is no evidence in the record that any of these defendants participated directly in the shooting of Patillo, and although Brown and Napper may have had the right to control the action of the police officers, they could not be held liable under section 1983 for having "the mere right to control without any

control or direction having been exercised.... *Monell*, 436 U.S. at 694 n. 58, 98 S.Ct. at 2037 n. 58.

*Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1503–04 (11th Cir.1985).

In footnote 10 at p. 1504 of 774 F.2d the en banc *Gilmere* court recognized that an isolated constitutional violation may lead to municipal liability under § 1983 if there is sufficient independent proof that the moving force of the violation was a municipal policy or custom. It was there noted that the court reached its present decision that the city was not liable under § 1983 not only because the shooting and beating was an isolated occurrence, but also because the plaintiff failed to prove that alleged inadequacy of Officer Sampson's training was the result of a municipal policy or custom within the meaning of *Monell*.

In *Bradberry v. Pinellas County*, 789 F.2d 1513 (11th Cir.1986), the Court took note of but did not reach the question whether a complaint alleging that a municipality grossly negligently trained one of its agents who then took affirmative action causing injury to an innocent bystander sufficiently stated a claim under 42 U.S.C. § 1983. Here the mother of a swimmer who drowned brought an action under 42 U.S.C. § 1983 against the county alleging that the county was grossly negligent because it inadequately trained lifeguards on duty at the county-owned beach and that one of those lifeguards proximately caused her son's death by drowning. The Court of Appeals held that the complaint was insufficient to state a claim under section 1983, stating:

> We simply hold that a local governmental body does not deprive a person of his right to life for purposes of 42 U.S.C. § 1983 when it grossly negligently trains one of its agents who then fails in an attempt to rescue that person from an existing peril not created by the governmental agency.

Concluding that the deceased son of plaintiff had suffered no constitutional deprivation, the Court wrote by way of footnote that it need not address whether plaintiff's complaint alleged an unconstitutional custom or policy. The Court noted that the recent Supreme Court opinion in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), explicitly left open the question of whether section 1983 liability can be predicated upon gross negligence.

Applying the principles of law hereinabove set out to the facts appearing in amended Count II of plaintiffs' complaint, accepting the facts as pleaded to be true and resolving them in the light most favorable to plaintiffs, the Court concludes and holds that amended Count II fails to state a claim against the defendant City of Athens, Alabama upon which relief can be granted. Conceding that plaintiffs' counsel of record, consistent with the restraints of Rule 11, Fed.R.Civ.P., could have included in the allegations of the amended complaint (which amended original Count II only) additional allegations of fact consistent with and in conformity to the requirements of *Monell* and its progeny with respect to "policy" or "custom", the fact remains that he did not do so. As a consequence the only allegations in amended Count II remotely bearing on the issue of the defendant municipality's section 1983 liability for the alleged unconstitutional actions of its police are as follows:

5.) At all times material herein, defendants, the City of Athens was a municipal corporation of the State of Alabama, and was the employer of the defendants Bill Davis, Harlan Mitchell, and Russ Morgan. Defendant City of Athens, provided each of the individual defendants Bill Davis, Harlan Mitchell, and Russ Morgan with an official badge and identification card which designated and described its bearer as a police officer of said city's police department. The City of Athens is the municipal corporation in whose name the individual defendants Bill Davis, Harlan Mitchell, and Russ Morgan performed all acts and omisions alleged here.

9.) The defendants Bill Davis, Harlan Mitchell, and Russ Morgan were servants and agents of the City of Athens,

so that their acts are imputed [sic] to the City of Athens.

On or about August 31, 1985 at the premises of the Town and Country Motel in Athens, Alabama the defendants Bill Davis, Harlan Mitchell, and Russ Morgan while acting in their official capacity as police officers for the City of Athens, Alabama did arrest the plaintiffs Victor Houston and Roosevelt Houston, Jr., and place the plaintiffs in the Limestone County jail.

Plaintiffs allege that the arrest of the plaintiffs by the defendants Russ Morgan, Harlan Mitchell, and Bill Davis was an unlawful seizure by the City of Athens, Alabama done in violation of the plaintiffs rights as secured by the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

■ Ever mindful of the repeated admonition of our appellate courts that a complaint should not be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), *Bradberry v. Pinellas County*, 789 F.2d 1513 (11th Cir.1986), this Court is of the considered opinion that such admonition does not require a district court to ignore or overlook the basic and fundamental pleading rule that a complaint must inform the party sued with what he is charged, or otherwise phrased, why he is alleged to be liable to plaintiff. In this case it is clear and certain that the only basis for liability alleged against the defendant municipality is that of respondeat superior which *Monell* flatly holds is insufficient. The defendant City of Athens has a legal right under the Federal Rules of Civil Procedure to be notified and informed with some certainty through the medium of plaintiffs' complaint the basis for plaintiffs' claim of municipal liability in this case. This Court at this juncture declines to speculate whether plaintiffs can or cannot prove a set of facts consistent with their burden of proof which would make it a question of fact whether the defendant City of Athens had a "policy" or "custom" which established an "affirmative link" to the alleged constitutional deprivations visited upon plaintiffs by the defendant city police officers. Moreover, this Court at this juncture also declines to speculate whether plaintiffs' counsel of record can or will, consistent with Rule 11, Fed.R.Civ.P., place his attorney signature to an additional amendment to amended Count II containing the requisite additional allegations of fact with respect to "policy" or "custom" mandated by *Monell* which are clearly necessary to establish municipal liability under 42 U.S.C. § 1983. It follows that the 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted of the defendant municipality directed to plaintiffs' amended Count II is due to be granted and that such amended count against the defendant City of Athens is due to be dismissed. An appropriate order will be entered. Although this case is set for trial on January 26, 1987 (changed, however, on the trial docket being mailed this week to January 13, 1987), the accompanying order will provide that plaintiffs are granted leave to further amend their amended Count II against the defendant municipality within 10 days of the date of such order, if they so elect. The attention of plaintiffs' counsel of record is directed to the provisions of Rule 11, Fed.R.Civ.P.

## Appendix

### Aug. 8, 1986
### COMPLAINT

#### JURISDICTION

1.) Jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331 and 28 U.S.C.A. 1343, 42 U.S.C.A. 2000a et seq. This suit is authorized and instituted pursuant to 42 U.S.C.A. 1981, 42 U.S.C.A. 1982, 42 U.S.C.A. 1983 and 42 U.S.C.A. 1985 and the Fourteenth Amendment to the Constitution of the United States. This court has pendant and ancillary jurisdiction over all other claims.

## PARTIES

2.) The plaintiff Victor Houston, is a black male citizen of the United States over the age of nineteen residing at 705 Browns Ferry Street, Athens, Alabama.

3.) The plaintiff Roosevelt Houston, Jr. is a black male citizen of the United States under the age of nineteen residing at 705 Browns Ferry Street, Athens, Alabama.

4.) The next friend Roosevelt Houston, Sr. is a black male citizen of the United States over the age of nineteen residing at 705 Browns Ferry Street, Athens, Alabama and is the father of the plaintiffs Victor Houston and Roosevelt Houston, Jr.

5.) At all times material herein, defendants, the City of Athens was a municipal corporation of the State of Alabama, and was the employer of the defendants Bill Davis, Harlan Mitchell, and Russ Morgan. Defendant City of Athens, provided each of the individual defendants Bill Davis, Harlan Mitchell, and Russ Morgan with an official badge and identification card which designated and described its bearer as a police officer of said city's police department. The City of Athens is the municipal corporation in whose name the individual defendants Bill Davis, Harlan Mitchell, and Russ Morgan performed all acts and omissions alleged here.

6.) At all times material hereto Limestone County, Alabama was a body corporated with the power to sue and be sued in court of record.

7.) The defendant Town and Country Motel is a sole propritorship owned and operated by the defendant, Charmon Patel, a resident of Limestone County, Alabama.

## COUNT I

8.) On or about the 31st day of August 1985 at the premises of the Town and Country Motel in Athens, Alabama, the defendants Bill Davis, Harlan Mitchell, and Russ Morgan, seperately and in concert, acted under the color of law statutes, ordinances, regulations of the State of Alabama, and the County of Limestone and the City of Athens to illegally deprive the plaintiffs of rights, privileges, and immunities sucured to the plaintiffs by the Fourteenth Amendment and the laws of the United States, to wit the defendants Bill Davis, Harlan Mitchell, and Russ Morgan did illegally arrest and physically assault and batter the plaintiffs Victor Houston and Roosevelt Houston, Jr. causing severe injury, pain, and suffering to said plaintiffs.

Wherefore Plaintiffs demand judgement against Bill Davis, Harlan Mitchell, and Russ Morgan in the sum of $250,000.

## COUNT II

9.) Plaintiffs incorporate by reference all allegations in paragraph 1 through 8 and alleges further that at all times material to this complaint. The defendants Bill Davis, Harlan Mitchell, and Russ Morgan were servants and agents of the City of Athens, so that their acts are impuated to the City of Athens.

Wherefore Plaintiffs demand judgement against the City of Athens in the sum of $250,000.

## COUNT III

10.) Plaintiffs incorporate all allegations in paragraphs 1 through 8. Plaintiffs were illegally arrested, malicously prosecuted, and placed in the Limestone County Jail in violation of their Constitutional Rights as secured under the Constitution and laws of the United States.

Wherefore Plaintiffs demand judgement against Limestone County in the sum of $250,000.

## COUNT IV

11.) Plaintiffs incorporate all allegations in paragraphs 1 through 8. The defendants Charman Patel and the Town and Country Motel, the City of Athens, and Limestone County acted in conspiracy to violate the Civil Rights of the plaintiffs by illegally arresting and malicously prosecuting the plaintiffs in violation of their rights as secured by the Constitution and laws of the United States.

Wherefore Plaintiffs demand judgement against Charman Patel and the Town and Country Motel, the City of Athens, and Limestone County in the sum of $250,000.

Plaintiffs demand trial by jury on all counts of their complaint.

/s/ Curtis M. Simpson
Curtis M. Simpson
108½ E. Tennessee Street
Florence, Alabama 35630
(205) 767-5969