**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

Nos. 85 C 7080, 85 C 7081.

United States District Court, N.D. Illinois, E.D.

Oct. 30, 1987.

James G. Hiering, Dennis C. Waldon, Jeffrey I. Berkowitz, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Lowell E. Sachnoff, Candace J. Fabri, Carolyn H. Rosenberg Safer, Charles J. Ryan, Duane F. Sigelko, Sachnoff, Weaver & Rubinstein, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively "Insurers")[1] have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chicago ("Bank")[2] and a host of other defendants, seeking to avoid liability under the directors' and offi-

---

1. Counsel for defendants and for Harbor Insurance Company ("Harbor") (the insurance carrier providing the primary coverage) have represented orally at several status hearings that they have agreed to a settlement of Harbor's claims and of defendants' counterclaims against Harbor. Though the settlement is conditioned on certain approvals, counsel suggested current motions be dealt with as though Harbor were not an active litigant. This opinion, like other recent opinions in these actions, follows that suggestion.

2. CIC and Bank are collectively called "Continental."

cers' ("D & O") liability policies (the "Policies") Insurers had issued to CIC.[3] Insurers now move for judgment on the pleadings under Fed.R.Civ.P. ("Rule") 12(c) on Count II of the Federal Deposit Insurance Corporation ("FDIC") Counterclaim (the "Counterclaim"). For the reasons stated in this memorandum opinion and order, Insurers' motion is granted.

### Standard for Decision

Rule 12(c) motions, like those for summary judgment, are designed to achieve a resolution of claims on their merits. Unlike a summary judgment motion, however, the Rule 12(c) motion limits the court to the pleadings themselves and to matters subject to judicial notice (5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1367, at 685 (1969)). Of course the pleadings include the documents attached to the Counterclaim as well as the allegations in the Counterclaim itself.[4]

Because FDIC is the nonmovant, all well-pleaded allegations in the Counterclaim must be accepted as true, with all reasonable inferences drawn in FDIC's favor (*Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 177 n. 2 (7th Cir.1986)).[5] Evidentiary submissions are unnecessary (or more accurately inappropriate), for the question is which party is entitled to judgment as a matter of law on the assumption that all FDIC's well-pleaded factual allegations are true. This time that question must be answered in Insurers' favor.

### FDIC's Counterclaim [6]

This Court's Eleventh Opinion, 113 F.R. D. 527 (1986) granted FDIC permission to file its after-acquired counterclaim under Rule 13(e). FDIC sues as assignee of Continental's former officers and directors, who had been defendants in the underlying securities litigation, *Consolidated Litigation*, Master File No. 82 C 4712 (N.D.Ill.) (see the Twenty–Third Opinion, 666 F.Supp. at 1184–85). FDIC seeks to enforce its assignors' rights to D & O coverage under the Policies.

As earlier opinions in these cases have reflected, the April 3, 1986 agreement under which FDIC acquired its rights (the "Option Agreement") was somewhat off the beaten path. In accordance with one of its provisions, a proposed $68 million settlement was initially tendered to Insurers with a demand that they fund that amount (¶¶ 20–21). When Insurers did not accept the settlement within 60 days (¶ 22), FDIC and the individual defendants executed an alternative agreement as called for in the Option Agreement, settling the litigation for $88 million. Under that agreement the individual defendants assigned to FDIC their right to seek indemnification for the larger settlement amount under the Policies (¶ 23).

Under the Counterclaim, FDIC sues for the $88 million in alternative ways:

1. as a claim within the Policies' limits (Count I) or

2. as a claim in excess of the Policies' limits, based on Insurers' breach of their duty to settle (Count II).

---

3. Because this Court has typically begun all its opinions in these cases with the same opening description, some means of early differentiation is useful. Solely for that purpose, it is noted this is this Court's twenty-seventh written opinion since the cases were assigned to its calendar after a series of recusals by other judges of this District Court. For the same ease in reference, earlier opinions will also be cited by number.

4. In like manner, the Twenty–Third Opinion, 666 F.Supp. 1180, 1186–88 (1987) considered Insurers' Policies (which are attached to their Amended Complaint) as part of the relevant pleadings for purposes of defendants' Rule 12(c) motion on several of Insurers' claims.

5. As with almost every general rule, there are of course caveats. *Hargis Canneries, Inc. v. United States,* 60 F.Supp. 729, 729 (W.D.Ark.1945) (citations omitted) explains:

> The motion for judgment on the pleadings admits all facts well pleaded, but does not admit conclusions of law; facts which the court will take judicial notice are not true; legally impossible facts; facts which would be inadmissible in evidence in the event of a trial nor facts which might appear by a record or document included in the pleadings to be unfounded.

6. Specific references to the Counterclaim's allegations will take the form "¶—."

Insurers' current challenge is to the second of those alternatives—they say any such excess claim (a) has been preempted by Illinois Insurance Code § 155, Ill.Rev.Stat. ch. 73, ¶ 767 ("Section 155") or (b) must lose because FDIC has not obtained a judgment against the individual defendants in excess of the Policies' limits. Although the first argument fails, the second is well founded.

### Preemption

Illinois has long recognized an insured's right to hold the insurer responsible for an amount in excess of the policy limits when the insurer has been guilty of fraud, bad faith or negligence in refusing to settle the underlying claim against the insured within those limits (see, e.g., *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.*, 325 Ill.App. 649, 60 N.E.2d 896 (1st Dist. 1945)). Because an insurer generally does not have an absolute duty to settle a claim against its insured, cases such as *Scroggins v. Allstate Insurance Co.*, 74 Ill.App.3d 1027, 1029, 30 Ill.Dec. 682, 684, 393 N.E.2d 718, 720 (1st Dist. 1979) teach:

> Accordingly, in Illinois there is imposed upon the insurer a duty, part of the implied-in-law duty of good faith and fair dealing arising out of the insurance relation, to give to the insured's interests consideration at least equal to that of its own in such a case.

When an insurer breaches that duty by refusing to settle (*id.*):

> it may be liable for the full amount of a judgment obtained against its insured, irrespective of its policy limits.

Despite the long and unbroken line of precedents to that effect, affirmed at least as recently as 1983 (*Phelan v. State Farm Mutual Automobile Insurance Co.*, 114 Ill.App.3d 96, 104, 69 Ill.Dec. 861, 866–67, 448 N.E.2d 579, 584–85 (1st Dist.1983)), Insurers insist such a remedy has been preempted by Section 155, which first took

effect in 1975 (see *Combs v. Insurance Co. of Illinois*, 146 Ill.App.3d 957, 961–62, 100 Ill.Dec. 525, 529, 497 N.E.2d 503, 507 (1st Dist.1986)). Indeed, Insurers say this Court so held in the Fourteenth Opinion (652 F.Supp. 858, 866 (1986)).

■ This is not the first time one of the litigants in these actions has tried to tell this Court what it decided in an earlier opinion here (see the Eighteenth Opinion, 658 F.Supp. 781, 788 (1987)). There is of course nothing systemically improper in such an effort,[7] but Insurers' attempt here falls just as flat as did defendants' earlier try.

In the Fourteenth Opinion, 652 F.Supp. at 860 this Court did hold that the individual defendants' common-law claims for breach of Insurers' implied duty of good faith and fair dealing were preempted by Section 155. All but one of those claims were based on Insurers' conduct in encouraging—allegedly with fraudulent intent—the individual defendants to continue litigating the underlying claims. Defendant Edwin Hlavka ("Hlavka") also asserted a claim "based on Insurers' allegedly unreasonable refusal to settle" (*id.* at 866). That claim was also held preempted by Section 155.

■ In fairness to Insurers, that last language can be read as saying what Insurers now say it does. As FDIC points out, however, an insured's claim "based on an unreasonable refusal to settle" can encompass claims for two distinct types of misconduct by the insurer:

> 1. an improper refusal to settle a claim asserted *against* its insured or
>
> 2. an improper refusal to "settle" a claim *by* its insured under its policy.

It was only the latter type of claim that the Fourteenth Opinion considered and found preempted by Section 155. Although Hlavka's counterclaim was apparently asserting both types of claims, he clearly had

---

7. Courts are *always* interpreting (or reinterpreting) what other courts have decided—that is the essence of what passes for legal reasoning (see Levi, *Introduction to Legal Reasoning* ) and is at the core of how legal concepts shift and grow while adhering to stare decisis principles (*id.*). In fact, even for purposes of issue preclusion (collateral estoppel) it is for the later court, not the original source of a decision, to decide what the first court decided.

previously assigned to FDIC any claim for excess coverage because of any bad faith by Insurers. Insurers never argued, and this Court did not consider, whether or not an excess coverage claim (whether by Hlavka or by FDIC) because of an insurer's bad faith refusal to settle was preempted by Section 155. *This* opinion now proceeds to examine such an argument.

Section 155 both permits and limits certain amounts to be taxed against an insurer as extraordinary "costs":

> for an unreasonable delay in settling a claim [if it also] appears to the court that such action or delay is vexatious and unreasonable.

Insurers' preemption argument is essentially a syllogism:

1. Section 155 preempts all common law actions for breach of an implied covenant of good faith and fair dealing (*Trautman v. Knights of Columbus*, 121 Ill.App.3d 911, 915, 77 Ill.Dec. 294, 460 N.E.2d 350, 353 (1st Dist.1984)), including breaches based on a refusal to "settle" (*Zakarian v. Prudential Insurance Co. of America*, 652 F.Supp. 1126, 1137 (N.D.Ill.1987)).

2. FDIC is asserting a claim for a bad faith refusal to settle—a claim based on Insurers' implied duty of good faith and fair dealing (*Scroggins*, 74 Ill.App.3d at 1029–30, 30 Ill.Dec. at 684, 393 N.E.2d at 720).

3. Therefore FDIC's claim is preempted by Section 155.

■ Insurers' syllogism fails because it ignores the lesson from *Combs*, 146 Ill. App.3d at 963–64, 100 Ill.Dec. at 530, 497 N.E.2d at 508, applied in *Zakarian*, 652 F.Supp. at 1136–37:

> *Combs* teaches it is not the legal theory [claimant] asserts ... that determines Section 155's preemptive effect. Instead this Court must look beyond such legal theories to the predicate acts or conduct forming the basis for that claim. If the alleged conduct is within the scope of Section 155, then the claim is preempted.

Here the conduct at issue does not fall within the scope of Section 155. To be sure, the statute does provide a remedy for unreasonable delays in "settling a claim"—language with the already-discussed potential double meaning. But that language, *as used in Section 155,* refers only to delays in paying a claim *by* the insured under the insurance policy. Unreasonable refusals to settle a claim *against* the insured must be viewed as a type of conduct not covered by Section 155.

Even a brief analysis demonstrates why that is so. By its terms Section 155 covers delay-oriented claims. Though such delays may arguably cause consequential as well as direct damages, the General Assembly has made a policy decision that balances competing interests:

1. Instead of encouraging inquiry into such collateral damage claims (with their obvious *Hadley v. Baxendale* problems), Section 155(1) sets defined bounds for the add-on recovery (with a ceiling of $25,000 under Section 155(1)(b)).

2. To avoid the erosion of the insurance proceeds by the cost of recovering them, Section 155(1) forces the insurer to bear the insured's litigation expenses.

Of course an outright refusal to make a payment is the ultimate in "delay" (*Zakarian*, 652 F.Supp. at 1137). But when that refusal frustrates a *third party's* willingness to settle a claim against the insured within the policy limits, the damage to the insured is truly direct rather than consequential—it is clearly measurable (in terms of the third party's excess recovery over the policy limits) and poses no arcane proximate cause issues (under *Hadley v. Baxendale* or otherwise). None of the myriad Illinois cases allowing claims against insurers in excess of policy limits has even hinted that Section 155 is implicated in the analysis, and this Court is not about to hold otherwise.

This analysis is buttressed by a look at the language and structure of Section 155 itself. By its terms it applies (Section 155(1), emphasis added):

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the *loss payable*

*thereunder,* or for an unreasonable delay in settling a claim. . . .

In like manner Section 155(2) speaks of the possibility of "several policies insuring the same insured against the *same loss* . . ." (emphasis again added). Those references to "loss payable thereunder" and "policies insuring . . . against . . . loss" fit the kinds of policies in which the insurer has withheld an amount due *to the insured:* proceeds of life insurance, fire insurance, business interruption insurance and the like. That language equally plainly does not apply to the situation in which the claimed misconduct by the insurer is its refusal to pay less than the policy coverage on a third party's claim against the insured—thus exposing the insured to far greater liability.

True enough, the first phrase in Section 155(1) speaks of "liability of a company on a policy or policies." But the sensible reading of that language as part of the whole statute, and not in isolation, also comports with the analysis in this opinion, rather than with the position asserted by Insurers.

Such a reading of Section 155 is reinforced (rather than undercut, as Insurers argue) by the absence of any case rejecting, on preemption grounds, such excess-coverage claims for bad faith refusals to settle. Not only is that excess-coverage bad-faith-refusal cause of action well-established, but it has been repeatedly reconfirmed after Section 155 came into the statute books. Possible preemption of such claims has not even been discussed in any of the post–1975 cases.

Judicial silence on that score is wholly understandable, not only in light of the language of Section 155 but also because that section's remedies would not even come close to providing an insured with protection from the type of bad faith conduct by an insurer at issue here. Those statutory remedies arguably give an insured adequate compensation for any damages caused by unreasonable delays in paying a claim *by* the insured, but they would offer cold comfort to an insured exposed to liability far in excess of a policy because of its insurer's bad faith refusal to settle. In Insurers' version of the universe, they can be totally arbitrary in exposing their insureds to unlimited liability, secure in the knowledge that Insurers themselves are at risk for no more than $25,000 of that amount. That is a distorted reading of both Section 155 and its purposes, and Insurers have to know it.

### Judgment v. Settlement

Insurers also argue FDIC cannot state a cause of action against them for liability in excess of their Policies' limits unless there has been a judgment rendered against the insureds in excess of the Policies. Here of course there has been no such judgment, because FDIC and the individuals settled rather than litigating to judgment.

Insurers point to the literal language in such cases as *Scroggins,* 74 Ill.App.3d at 1030, 30 Ill.Dec. at 684, 393 N.E.2d at 720:

The fact of the entry of the excess judgment against the insured itself constitutes the damage that permits the insured to recover for breach of the duty owed.

That language is echoed in other authorities (see, e.g., 7C Appleman, *Insurance Law and Practice* § 4712, at 431 (1979)):

The cause of action [for excess liability] arises when the insured is required to pay a judgment that is in excess of his policy limits.

Neither litigant has identified any Illinois case that has ruled either way on whether an adverse judgment is a precondition to suit. FDIC insists it can enforce the settlement in excess of the Policies' limits because Insurers acted negligently or in bad faith when they refused FDIC's earlier lower offer. FDIC cites several cases from other jurisdictions recognizing such a right. Additionally it argues Illinois law would give an insured the same right to settle and enforce a settlement against its insurer after a breach of the duty to *settle* as it does after a breach of the duty to *defend* (the latter cause of action is recognized by the Illinois cases). To address those arguments adequately, it is necessary to look at the policies and the reasoning underlying the cause of action at issue here.

When an insured faces a claim in excess of its [8] insurance coverage, the insured and insurer often have conflicting interests (legitimate on each side) as to litigation and settlement strategy. Each wants to avoid its liability entirely—or alternatively the insurer would like to minimize its own liability if it cannot escape altogether. That means any offer to settle within the policy limits will be acceptable to an insured, while insurers can and often do decide to gamble and face exposure greater than the settlement offer because of the chance to avoid liability altogether (or minimize it further) at trial. Unfortunately for the insured, who is also put at risk by such a gamble, insurers usually control whether to accept a settlement offer.

When an insured pays an insurance premium, part of the bargained-for protection is the insurer's payment of settlements (not just its payment of judgments after trial). Illinois courts therefore impose an obligation on every insurer to give an insured's interests *at least* equal weight when considering whether to accept settlement offers (*Scroggins*, 74 Ill.App.3d at 1029, 30 Ill.Dec. at 684, 393 N.E.2d at 720). Insurers' refusals to settle usually force insureds to go to trial, thus risking judgments in excess of the insurance coverage —and hence risking personal liability. If the insurer's settlement refusal decision is made negligently or in bad faith, Illinois courts properly impose liability on the insurer for any harm caused the insured (the amount by which the judgment exceeds the policy). In that way the insurer may still gamble, but the adverse consequences of every careless or bad faith gamble are thrust on the insurer and not the insured.

FDIC contends the individual defendants had the right to settle the claims against them on their own after Insurers allegedly breached their own duty to settle those claims. FDIC further claims the right to collect that settlement amount from the Insurers, even though in excess of the Policies' limits, so long as the settlement is reasonable and was reached in good faith. Insurers do not challenge the former prop-osition (at least for now), but they hotly contest the latter.

Illinois law allows an insured to effect a reasonable settlement on its own after the insurer has breached the duty to settle (*Krutsinger v. Illinois Casualty Co.*, 10 Ill.2d 518, 527, 141 N.E.2d 16, 21 (1957)), just as after the insurer has breached the duty to defend (*Thornton v. Paul*, 74 Ill.2d 132, 144–45, 384 N.E.2d 335, 340 (1979)). FDIC seeks to equate those two kinds of breaches, so that the only limitations on collecting the settlement amount from the insurer in either situation are the insured's good faith and the settlement's reasonableness.

When an insurer totally abandons its insured by breaching the duty to defend, such abandonment waives most of the insurer's rights under its policy, including any right to approve a settlement. But the insurer is not rendered absolutely liable for all claims against the insured. Even if the insured then suffers a judgment in excess of the policy, it cannot collect that full amount from its insurer absent a showing that the insurer's breach also cost the insured an opportunity to settle below the policy limits (see *United States Fidelity & Guaranty Co. v. Copfer*, 48 N.Y.2d 871, 424 N.Y.S.2d 356, 400 N.E.2d 298 (1979); cf. *Kinnan v. Charles B. Hurst Co.*, 317 Ill. 251, 148 N.E. 12 (1925)). Such proof is insisted upon to meet the causation requirement: that the insurer's breach of its duty to defend was the but-for source of the insured's liability beyond policy limits (see *State Farm Mutual Auto Insurance v. Paynter*, 122 Ariz. 198, 204–05, 593 P.2d 948, 954–55 (App.1979), citing and quoting from *Mannheimer Bros. v. Kansas Casualty & Surety Co.*, 149 Minn. 482, 184 N.W. 189 (1921)). If a settlement was available within the policy limits and the insurer's breach of the duty to defend frustrated that settlement, there would appear to be no principled distinction between a later excess judgment for the insured and a later excess settlement made by the insured reasonably and in good faith. In

---

**8.** For simplicity the neutral pronoun "it" will be used to refer to an insured as well as an insurer.

each instance the breach would have triggered the excess liability.

When an insurer breaches only its duty to settle, it may be argued the insured should not be allowed to settle on its own because the insurer still has legitimate interests in preventing or mitigating its liability by forcing a trial (see *Fireman's Fund Insurance Co. v. Security Insurance Co. of Hartford*, 72 N.J. 63, 367 A.2d 864, 873–77 (1976) (Clifford, J., dissenting)). As FDIC points out, however, claims in excess of policy limits force an insured to gamble with its own money. And so long as the insured cannot look to the insurer for that excess amount without proving the insurer's negligence or bad faith, the insured has ample incentive to be reasonable in negotiating settlements itself—for it will be out of pocket if it cannot sustain its burden of proof.

In any event, all the courts that have considered the question have allowed insureds (1) to effect reasonable settlements on their own after their insurers have breached their duty to settle and (2) to enforce those settlements against the insurers if reasonable and made in good faith (see, e.g., *Krutsinger*, 10 Ill.2d at 527, 141 N.E.2d at 21; *Mendota Electric Co. v. New York Indemnity Co.*, 211 N.W. 317, 318 (Minn.1926)). Ordinarily that enforcement involves only an amount up to the policy limit (*Fireman's Fund*, 367 A.2d at 870; *Evans v. Continental Casualty Co.*, 40 Wash.2d 614, 245 P.2d 470, 479 (1952); see also 14 *Couch on Insurance 2d* § 51:30, at 430 (rev. ed. 1982)). However, FDIC identifies three cases imposing full liability on insurers for settlements in excess of the policy coverage: *Town of Poland v. Transamerica Insurance Co.*, 53 A.D.2d 140, 385 N.Y.S.2d 987 (1976), *Potomac Insurance Co. v. Wilkins Co.*, 376 F.2d 425 (10th Cir.1967) and—also fully supporting FDIC's position—*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Seafirst Corp.*, No. C85–396R (W.D.Wash. Mar. 25, 1987).

In addition to being the most recent case to consider the issue, *Seafirst* is closest to this one in factual terms (that is, if FDIC's allegations here are accepted as gospel). There the insured was allowed to enforce an independent settlement in excess of policy limits against National Union because of National Union's earlier bad faith refusal to settle within policy limits. Judge Rothstein saw no reason to treat a settlement any differently than a judgment in excess of the policy limits, so long as that settlement was reasonable and reached in good faith. Because she was required to look to Washington law in her diversity case, she had to reconcile her analysis with that of the Washington Supreme Court in *Evans*.[9] Although *Evans*, 245 P.2d at 479 had suggested such settlements could be enforced only up to the policy limit, Judge Rothstein found the state court had not been faced with the question of a settlement in excess of policy limits. Accordingly she felt free to rule as she did.

■ So long as the insured retains—as it must—the burden of proving causation as well as the reasonableness and the bona fides of the excess settlement, this Court concurs with Judge Rothstein. Again, so long as the insurer's breach of its duty to settle is shown to have deprived the insured of the opportunity for a favorable settlement, no rational distinction separates the insured's striking the next best deal it can make from the insured's going to trial and getting hit with a larger judgment. Either way the insured has been compelled to accept liability because of the insurer's negligence or bad faith in rejecting the more favorable settlement.

### Actual Harm

FDIC's victory on the issue just discussed forces its defeat on an equally critical issue—a classic instance of winning the battle but losing the war. At several points in the preceding analysis this opinion has stressed the need for the insured to be at risk for the settlement amount in excess of the policy limits before it can seek to thrust that risk onto its insurer. That after all is the factor that builds into the

9. This Court faces no such problem, for Illinois case law really casts no light on the question.

equation the elements of the settlement's reasonableness and the insured's bona fides—that at-risk requirement provides the equivalent of an adversary litigation that produces a judgment in excess of the policy limits.[10] If the insured is speculating only with the insurer's dollars—a sort of "Heads I win, tails I lose nothing"—there is no rational limit imposed on the putative settlement.

 It is hardly surprising that Illinois requires the insured to face at least the threat of personal liability in excess of the policy before it or its assignee can collect such an amount from its insurer (see *Steele v. Hartford Fire Insurance Co.*, 788 F.2d 441, 449–50 (7th Cir.1986)). Although the insured need not show its actual ability to pay the full judgment (*Wolfberg v. Prudence Mutual Casualty Co. of Chicago*, 98 Ill.App.2d 190, 196–97, 240 N.E.2d 176, 179–80 (1st Dist.1968)), it must be personally liable for the excess amount (*Childress v. State Farm Mutual Automobile Insurance Co.*, 97 Ill.App.2d 112, 119–20, 239 N.E.2d 492, 496–97 (4th Dist.1968); accord, *Smiley v. Manchester Insurance & Indemnity Co. of St. Louis*, 13 Ill.App.3d 809, 814, 301 N.E.2d 19, 22 (2d Dist.1973)).

FDIC's settlement with the individual defendants does not expose them to such personal liability. It calls for FDIC to collect the $88 million only from Insurers. True enough, if FDIC is unable to do that for specified reasons, FDIC can then go after the individual defendants. But in that event the individuals' liability (if any) would be determined only after further arbitration or litigation.

 In the sense called for by the cases, the individual defendants are not in any way personally liable for the $88 million amount of the settlement. That being so, they have not been demonstrably harmed, as to the uninsured portion of the settlement figure, by Insurers' breach of their duty to settle. In turn FDIC, as

assignee, cannot enforce that settlement against Insurers in excess of their Policies' limits (see *Childress*, 97 Ill.App.2d at 119–20, 239 N.E.2d at 496–97).[11]

### Conclusion

FDIC's efforts to saddle Insurers with liability in excess of the Policies' limits—a liability predicated on Insurers' claimed unreasonableness or bad faith in turning down a lesser settlement figure—surmounts several of the roadblocks Insurers have sought to erect. But FDIC ultimately falls for lack of the necessary showing of causation. Count II of FDIC's Counterclaim is dismissed.

---

**10.** In case of settlement, the need for the insured to prove its own good faith and the settlement's reasonableness provides the equivalent of the arms-length nature of an adverse judgment after trial.

**11.** This result makes it unnecessary to deal now with the question whether the $88 million settlement would meet the tests of reasonableness and bona fides.