MICHAEL SCROGGINS *et al.*, Plaintiffs-Appellants, *v.* ALLSTATE INSURANCE COMPANY, Defendant-Appellee.—(ANASTASIOS KARABATSOS *et al.*, Defendants.)

First District (2nd Division)   No. 77-1941

Opinion filed August 7, 1979.

Heller and Morris, and Schwartzberg, Barnett and Cohen, both of Chicago (Benjamin H. Cohen and Hugh J. Schwartzberg, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban and Fuller of Chicago (D. Kendall Griffith, Jill B. Berkeley, and Stephen R. Swofford, of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Michael Scroggins and Catherine Russo, brought this action to recover damages for injuries allegedly incurred when they were struck by an automobile. Counts I through III of plaintiffs' complaint named as defendants Anastasios Karabatsos, the driver of the vehicle, and Kyriakos Karabatsos, his father. Count IV of the complaint was directed against the individual defendants' insurer, defendant Allstate Insurance Company (Allstate); it sought damages for Allstate's allegedly wrongful refusal to negotiate in good faith with plaintiffs, as claimants against Allstate's insureds.

On Allstate's motion, the circuit court of Cook County dismissed count IV, finding that there was no just reason to delay enforcement of or appeal from the order. Plaintiffs appeal from this dismissal, contending that Allstate's alleged breach of its duty to negotiate in good faith with plaintiffs gives rise to a cause of action on their behalf.

In more detail, plaintiffs' complaint alleged that the driver of the vehicle which struck them was proceeding down a street when he saw

someone he knew crossing the street in mid-block. The driver allegedly increased his speed and aimed his car at his acquaintance, not intending to hit her, but just "goofing off." However, when he swerved to avoid the pedestrian, he lost control of his vehicle and collided with plaintiffs, who were standing across the street. Counts I through III of the complaint alleged negligence and wilful and wanton conduct on the part of the driver and his father, for whom the driver was allegedly acting as agent.

Count IV of the complaint alleged that Allstate insured the driver and his father up to a liability limit of $50,000 per occurrence and $100,000 for more than one occurrence. Allstate acknowledged coverage, opened a claim file, and requested information regarding plaintiffs' special damages. Plaintiffs' attorneys eventually responded by requesting that Allstate review its file for the purpose of making a settlement offer. Plaintiffs enclosed copies of statements by the driver and the pedestrian. In addition, plaintiff Scroggins submitted "special damages items" amounting to approximately $1150, while those submitted by plaintiff Russo came to about $13,000. Plaintiffs demanded $25,000 for Scroggins and the policy limits of $50,000 for Russo. Plaintiffs asserted that based upon those facts, the witness' statements, and the medical reports and bills, all "reasonable minds of prudent insurers" would evaluate Russo's claim as exceeding the policy limits ($50,000) and Scroggins' claim as exceeding $1000. However, Allstate offered Russo only $20,000 and Scroggins only $1000. Plaintiffs essentially asserted that this constituted an intentional breach of duty on the part of Allstate to negotiate in good faith with plaintiffs, as claimants against Allstate's insureds. Plaintiffs alleged that they were damaged in that Scroggins was embarrassed because of his inability to pay medical expenses, plaintiffs were forced to file a lawsuit and incur the attendant expense, and plaintiffs had suffered great emotional and mental distress, whereupon plaintiffs sought compensatory and punitive damages.

■■ The issue is whether, on the facts alleged, plaintiffs have stated a cause of action against Allstate. Because liability insurance policies ordinarily leave to the insurer the decision whether to settle a claim against the insured, it is generally held that this gives rise to a duty on the part of the insurer to give some consideration to the insured's interest in an action where recovery may otherwise exceed the policy limits. (See Annot., 60 A.L.R.3d 1190, 1192 (1974).) Accordingly, in Illinois there is imposed upon the insurer a duty, part of the implied-in-law duty of good faith and fair dealing arising out of the insurance relation, to give to the insured's interests consideration at least equal to that of its own in such a case. (*Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 207, 216 N.E.2d 198; see *Ballard v. Citizens Cas. Co.* (7th Cir. 1952), 196 F.2d 96; *Olympia Fields Country Club v. Bankers*

*Indemnity Insurance Co.* (1945), 325 Ill. App. 649, 60 N.E.2d 896.) If the insurance company instead commits conduct constituting fraud, negligence, or bad faith in refusing to settle a case within policy limits, it may be liable for the full amount of a judgment obtained against its insured, irrespective of its policy limits. (*DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 37-38, 351 N.E.2d 302; *Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 204-08, 216 N.E.2d 198; see generally 44 Am. Jur. 2d *Insurance* §§1530-32 (1969); 7A J. Appleman, Insurance Law and Practice §§4711-13 (1962); Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv. L. Rev. 1136 (1954); other authorities collected in 6 Am. Jur. Proof of Facts 2d, at 248-50 (1975), at 25-26 (1978 supp.).) The fact of the entry of the excess judgment against the insured itself constitutes the damage that permits the insured to recover for breach of the duty owed. *Wolfberg v. Prudence Mutual Casualty Co.* (1968), 98 Ill. App. 2d 190, 240 N.E.2d 176; see Annot., 63 A.L.R.3d 627 (1975).

■ Because the duty, though implied in law, arises out of the insurance contract relationship (*Brown v. State Farm Mutual Automobile Insurance Association* (1971), 1 Ill. App. 3d 47, 50-51, 272 N.E.2d 261; *Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 206-07, 216 N.E.2d 198), it is clear that the duty is owed to the insured, such that in appropriate circumstances constituting a breach of that duty, the insured may sue his insurer for damages resulting from the insurer's wrongful failure to settle a claim against him. (Annot., 60 A.L.R.3d 1190, 1192-93 (1974); see other authorities cited above.) However, the question arises whether, and under what circumstances, a third party injured by the insured may bring such an action against the insured's liability insurer. See generally Annot., 63 A.L.R.3d 677 (1975).

■ Where the insured's claim for wrongful failure to settle is assignable (see generally Annot., 12 A.L.R.3d 1158 (1967)), as in Illinois (*Brown v. State Farm Mutual Automobile Insurance Association* (1971), 1 Ill. App. 3d 47, 272 N.E.2d 261), a third-party claimant who has obtained an excess judgment against the insured may acquire and prosecute the insured's claim by virtue of an assignment. (See *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 948, 338 N.E.2d 912; *Smiley v. Manchester Insurance & Indemnity Co.* (1973), 13 Ill. App. 3d 809, 301 N.E.2d 19.) Similarly, depending upon the particular language of a jurisdiction's garnishment statute (see generally Annot., 60 A.L.R.3d 1190 (1974)), a judgment creditor of an insured may be able to bring a garnishment action against the insurer, although it has been held that such an action does not lie under the applicable statute in Illinois. (*Powell v. Prudence Mutual Casualty Co.* (1967), 88 Ill. App. 2d 343, 232 N.E.2d 155.) In either case, it is clear that the claim asserted by the injured third party is

predicated upon an alleged breach of the duty owed by the insurer to its insured. See *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 948, 338 N.E.2d 912; *Powell v. Prudence Mutual Casualty Co.* (1967), 88 Ill. App. 2d 343, 232 N.E.2d 155.

█▌ In the instant case, however, plaintiffs are suing in their own right, as third-party claimants against the insured, for the insurer's allegedly wrongful refusal to settle their claim. Even assuming arguendo that they have adequately alleged a breach of the duty of good faith and fair dealing on the part of the insurer, that duty is one which the insurer owes to its insured, not to third parties. (*Yelm v. Country Mutual Insurance Co.* (1970), 123 Ill. App. 2d 401, 404, 259 N.E.2d 83.) Yet it is elementary that in an action founded on a breach of duty, the plaintiff must allege facts showing a breach of a duty owed to him. (*E.g., Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 947-48, 338 N.E.2d 912.) Thus, the rule in Illinois and nearly all jurisdictions is that in the absence of statutory or contractual language sanctioning a direct action, an injured third party has no action against the insurer for breach of the duty to exercise good faith or due care by virtue of his standing as judgment creditor of the insured. (*Yelm v. Country Mutual Insurance Co.* (1970), 123 Ill. App. 2d 401, 259 N.E.2d 83; accord, *e.g., Murphy v. Allstate Insurance Co.* (1976), 17 Cal. 3d 937, 941-42, 553 P.2d 584, 132 Cal. Rptr. 424; see Annot., 63 A.L.R.3d 677, 682, and cases cited at 686 (1975).) For the same reason, because the duty is intended to benefit the insured and not third parties, actions by injured claimants founded on third party beneficiary principles have not been permitted. *E.g., Murphy v. Allstate Insurance Co.* (1976), 17 Cal. 3d 937, 943-44, 553 P.2d 584, 132 Cal. Rptr. 424; *Bennett v. Slater* (1972), 154 Ind. App. 67, 289 N.E.2d 144; Annot., 63 A.L.R.3d 677, 682-83, 701 *et seq.* (1975).

In addition to the absence of any duty owed to third parties by the insurer, courts have relied on the absence of damages in refusing to permit direct actions against insurers by judgment creditors of the insured. (*Yelm v. Country Mutual Insurance Co.* (1970), 123 Ill. App. 2d 401, 404, 259 N.E.2d 83; *Bennett v. Slater* (1972), 154 Ind. App. 67, 289 N.E.2d 144; *Pringle v. Robertson* (1970), 258 Or. 389, 393, 465 P.2d 223, *adhered to on rehearing* (1971), 258 Or. 394, 483 P.2d 814; other cases cited in Annot., 63 A.L.R.3d 677, 688-89 (1975).) As has often been noted, the injured claimant usually benefits from a wrongful refusal to settle, since instead of receiving an award near or below the policy limits, he stands to obtain a judgment exceeding policy coverage. *E.g., Murphy v. Allstate Insurance Co.* (1976), 17 Cal. 3d 937, 941, 553 P.2d 584, 132 Cal. Rptr. 424.

█▌ If these principles apply to bar direct actions against insurers by third parties who have already obtained a judgment in excess of policy limits

against the insured, they clearly apply to bar plaintiffs, who are at best potential judgment creditors, from bringing the instant action against Allstate. Indeed, since no excess judgment has yet been rendered against the insured, it remains speculative whether the alleged breach of duty will ever result in the injury that normally gives rise to an action for breach of the duty. (See generally *Wolfberg v. Prudence Mutual Casualty Co.* (1968), 98 Ill. App. 2d 190, 240 N.E.2d 176.) Plaintiffs have cited, and we have found, no case in the country permitting a direct action against an insurer by a third-party claimant at this stage of litigation, in the absence of statutory or contractual sanction of such an action. Neither have plaintiffs shown that the necessity for such an action outweighs the potential difficulties Allstate has argued are likely to ensue, such as the possibility that insurers will effectively be coerced into settling where their liability has not and may never be established. If plaintiffs do recover an excess judgment against Allstate's insureds, and if they obtain by assignment any claim the insureds might have against Allstate, perhaps then they may have an action against Allstate. But under the case law discussed above, they clearly have no standing to bring such an action now.

The question remains whether the enactment of certain statutes in Illinois has created a duty which plaintiffs can presently enforce in their own right. In 1967, the General Assembly added section 154.1 to the Illinois Insurance Code (Ill. Rev. Stat. 1967, ch. 73, par. 766.1). That section authorized the Director of Insurance to investigate and hold hearings on improper claims practices by insurers. Upon a finding that an insurance company was "habitually and without just cause engaging in a general business practice of unreasonable delay or refusing to settle claims * * *, and that a proceeding * * * would be in the interest of the public," the Director was instructed to order the company to cease and desist and was empowered to suspend the company's certificate of authority for up to 30 days. In addition, at about the same time the General Assembly amended section 424 of the Illinois Insurance Code to define the same conduct as an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. (Ill. Rev. Stat. 1967, ch. 73, par. 1031.) Upon the same findings that prohibited conduct had been committed and that a proceeding would be in the public interest (Ill. Rev. Stat. 1967, ch. 73, par. 1033), after hearing, the Director was directed to issue a cease-and-desist order.

In 1972, the General Assembly enacted additional provisions relating to improper claims practices. One new section of the Illinois Insurance Code, section 154.3, provided in part:

"Any of the following acts by a[n insurance] company, if

committed without just cause and performed with such frequency as to indicate a general business practice, constitute improper claims practices:

\* \* \*

d.) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear; \* \* \*." (Ill. Rev. Stat. 1975, ch. 73, par. 766.3.)

After a hearing and a finding, the Director was similarly directed to order the offending company to cease and desist and was authorized to suspend the company's certificate for up to 30 days. Ill. Rev. Stat. 1975, ch. 73, par. 766.4.

These provisions remained in effect until September 22, 1977, when Public Act 80-926 became effective. That amendment to the Illinois Insurance Code repealed sections 154.1 through 154.4 (Ill. Rev. Stat. 1975, ch. 73, pars. 766.1 through 766.4) and replaced them with sections 154.5 through 154.8 (Ill. Rev. Stat. 1977, ch. 73, pars. 766.5 through 766.8). Section 154.5 provides that it is an improper claims practice:

"\* \* \* to commit any of the acts contained in Section 154.6 if:

"(a) It is committed knowingly in violation of this Act or any rules promulgated hereunder; or

(b) It has been committed with such frequency to indicate a persistent tendency to engage in that type of conduct."

Section 154.6 retains as improper claims practices all those acts that were prohibited under the former sections, including "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." (Ill. Rev. Stat. 1977, ch. 73, par. 766.6(d).) Section 154.6 also lists additional proscribed acts and provides that any of the enumerated acts by an insurance company, "if committed without just cause and in violation of Section 154.5, constitutes an improper claims practice." Sections 154.7 and 154.8 provide for administrative enforcement by the Director in the same manner as the sections they replaced. Public Act 80-926 also harmonized section 424(4) of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 1031(4)) to define as unfair methods of competition "[e]ngaging in any of the acts or practices defined in or prohibited by Sections 154.5 through 154.8 of the 'Illinois Insurance Code'."

Plaintiffs contend that these sections impose a statutory duty on insurers to negotiate in good faith where liability has become reasonably clear, such that Allstate's alleged breach of that duty should give rise to a private right of action on plaintiffs' behalf, though the Insurance Code provides only for enforcement by the Director. Plaintiffs further argue

that under new section 154.5(a), one act committed knowingly in violation of the sections or rules promulgated thereunder constitutes an improper claims practice.

Allstate points out that at the time plaintiffs' purported claim arose and the time their complaint was filed (April 14, 1977), section 154.5 was not yet in existence or effect. Rather, under then existing section 154.3 a finding of an improper claims practice required that the acts be committed "with such frequency as to indicate a general business practice," thus militating against implication of an action for a single refusal to settle. Allstate further argues *inter alia* that a private right of action in plaintiffs' behalf should not lie under the statute in any event, since plaintiffs are not members of the class for whose especial benefit the statute was enacted.

■■ This court recently had occasion to discuss and apply the principles relating to the implication of private rights of action for breach of statutory duties. (See *Sherman v. Field Clinic* (Docket No. 78-1578, June 19, 1979, slip op. at 10-11), 74 Ill. App. 3d 21, 29, 392 N.E.2d 154, 160, and cases cited therein.) Even assuming arguendo that plaintiffs may invoke the later statute, and even assuming plaintiffs have adequately alleged a breach of a statutory duty on the part of the insurer to negotiate in good faith where liability is reasonably clear, they have once again failed to establish that the breach is of a duty running to them. Put another way, they have failed to establish that they fall within the class of persons the statute is designed to protect (*Sherman v. Field Clinic*, slip op. at 10); that is, " 'the class for whose *especial* benefit the statute was enacted.' " (*Cort v. Ash* (1975), 422 U.S. 66, 78, 45 L. Ed. 2d 26, 36, 95 S. Ct. 2080, 2088 (emphasis in original).) Rather, the statute would appear to have been enacted for the benefit of the insured, analogous to the common law duty discussed above (see 4 Restatement (Second) of Torts §874A, comments *f* and *i* (1979)), as well as to provide an administrative enforcement mechanism for the benefit of the public at large. See Ill. Rev. Stat. 1977, ch. 73, par. 766.7 (Director must find that enforcement would be in the public interest).

One basis for plaintiffs' contention that the statute was designed to protect them lies in a rule promulgated by the Director of Insurance under the Act, Rule 9.19(5)(H) (improper claims practices), which provides: "The [insurance] company shall affirm or deny liability on first or *third* party claims within a reasonable time, * * *." (Emphasis supplied.) While we agree that the statute and rule are apparently intended to cover third-party as well as first-party claims, plaintiffs' argument fails to recognize that the insurer's duty has always run to its insured in either context. (See generally *Austero v. National Casualty Co.* (1978), 84 Cal. App. 3d 1, 148 Cal. Rptr. 653, 670.) An example of the third

party claimant situation is *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912, in which the liability insurer allegedly wrongfully refused to settle a claim by a third party against its insured, resulting in the entry of an excess judgment against its insured. This constituted a breach of duty owed to the insured, for which the injured party was able to sue only by virtue of an assignment of the insured's cause of action. In contrast, first party situations typically arise in a casualty insurance context, where the insured and the claimant are the same. An example is *Silberg v. California Life Insurance Co.* (1974), 11 Cal. 3d 452, 521 P.2d 1103, 113 Cal. Rptr. 711, 716-17, involving a health insurance claim, in which the court held that the same implied duty of good faith and fair dealing that runs to the insured in third-party situations enured to the benefit of first-party-claimant-insureds. In either context, the duty has always been construed as running to the insured, and thus plaintiffs' contention in this regard is without merit.

Plaintiffs also cite and rely on the recent case of *Royal Globe Ins. Co. v. Superior Court* (1979), 23 Cal. 3d 880, 592 P.2d 329, 153 Cal. Rptr. 842, in which the California Supreme Court held, by a 4-3 majority, that a third-party claimant could sue an insurer for violation of a section of California's Unfair Practices Act (Cal. Ins. Code Ann. §790.03(h)(5) (West 1979 Supp.)) that proscribes exactly the same conduct as section 154.6(d) of our Illinois Insurance Code, set out above. (Ill. Rev. Stat. 1977, ch. 73, par. 766.6(d).) However, with all due respect, we cannot find that decision persuasive here.

First of all, one important basis for the court's decision in *Royal Globe* was that an accompanying section of California's Unfair Practices Act provided that a cease-and-desist order issued under the Act "would not in any way relieve or absolve" the insurer "from civil liability * * * under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." (Cal. Ins. Code Ann. §790.09 (West 1972).) The *Royal Globe* court stressed the fact that the word "other" had originally preceded the phrase "laws of this State," but had been eliminated, thus opening the door to the possibility of civil liability under the Act itself. In contrast, the only comparable provision in our Illinois Insurance Code preserves the word "other" and addresses itself only to "liability under any *other* laws of this State." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 73, par. 1035(3).) Thus, whatever the merit of this ground of decision, if any (see *Royal Globe Insurance Co. v. Superior Court* (1979), 23 Cal. 3d 880, 592 P.2d 329, 153 Cal. Rptr. 842, 850 (Richardson, J., dissenting)), it is not present here. Rather, enforcement of our act has specifically been delegated only to the Director of Insurance, on whose specialized expertise enforcement of the act depends. *Cf. Holloway v. Bristol-Myers Corp.* (D.C. Cir. 1973, 485 F.2d 986 (FTC Act).

Next, and more important, we note that three years before the 4-3 decision by the California Supreme Court in *Royal Globe,* in a decision we have already cited, the same court *unanimously* held that the insurer's duty to settle runs to the insured and not to third-party claimants. (*Murphy v. Allstate Insurance Co.* (1976), 17 Cal. 3d 937, 553 P.2d 584, 132 Cal. Rptr. 424.) In view of that holding, as an intermediate California appellate court remarked in a decision following *Murphy* but preceding *Royal Globe,* it would be "rather a startling proposition" to hold that a statutory enactment of the duty to settle somehow extended it to third-party claimants. (*Scheuch v. Western World Insurance Co.* (1978), 82 Cal. App. 3d 31, 145 Cal. Rptr. 294, 297; see also *Royal Globe Insurance Co. v. Superior Court* (1979), 23 Cal. 3d 880, 592 P.2d 329, 153 Cal. Rptr. 842, 850 (Richardson, J., dissenting).) Nevertheless, without purporting to disapprove its decision in *Murphy,* this is what the *Royal Globe* majority did. The only other apparent basis for its decision is that some of the other unfair practices enumerated in the California statute refer to both claimants and insureds. As we have pointed out above, the duty to settle has always been construed as running only to the insured, whether in first- or third-party claimant situations. While other unfair practices defined in the statute may refer to claimants, we believe that a more explicit legislative intent to extend the duty to settle to third-party claimants should be required where imposition of such a duty would be in derogation of so much common law. As Justice Richardson states in his dissent in *Royal Globe:*

> "If, as the majority asserts, the Legislature had intended to change the course of [the] law 180 degrees and thereafter to impose upon carriers civil liability to injured third persons for failing to settle claims against their insured, then surely much more direct and precise language would have been selected." (*Royal Globe Ins. Co. v. Superior Court* (1979), 23 Cal. 3d 880, 896, 592 P.2d 329, 340, 153 Cal. Rptr. 842, 853.)

Neither can the fact that the legislature has increasingly broadened the duties imposed on insurers in the Insurance Code justify quasilegislative extension of those duties, and creation of new duties, by the judiciary. Accordingly, plaintiffs' arguments would more properly be addressed to the legislature.

Allstate points out that section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 767), which immediately follows but is not a part of the Illinois improper claims practices sections (Ill. Rev. Stat. 1977, ch. 73, pars. 766.5 through 766.8), provides for attorneys' fees in actions "for an unreasonable delay in settling a claim." Yet this statute, too, has been construed as protecting only insured parties, and not extending to third-party claimants. (*Stamps v. Caldwell* (1971), 133 Ill. App. 2d 524,

528, 273 N.E.2d 489.) Allstate further notes that in Illinois, "entertaining direct action suits is contrary to a firmly-fixed public policy" (*Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 332, 239 N.E.2d 799), and the legislative bases for the court's finding to that effect remain standing today, militating against the imposition of an implied right of action by third parties for breach of any statutory duty imposed by the Insurance Code. (See, *e.g.*, section 388 of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 1000), construed in *Marchlik* and *Pohlman v. Universal Mutual Casualty Co.* (1957), 12 Ill. App. 2d 153, 138 N.E.2d 848.) Allstate goes on to raise other problems that would potentially ensue from recognition of plaintiffs' proposed cause of action, but it suffices to say that plaintiffs have failed to allege a breach of any duty owed to them, the existence of any injury resulting therefrom, or a basis for the judicial imposition of such a duty. The trial court properly dismissed count IV of plaintiffs' complaint for failing to state a cause of action against Allstate.

Accordingly the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.