**O.K. LUMBER COMPANY, INC., Appellant,**

v.

**PROVIDENCE WASHINGTON INSURANCE COMPANY, Appellee.**

No. S–2182.

Supreme Court of Alaska.

July 22, 1988.

---

**4.** Boyles and Wagner do not appeal questions of admissibility of specific pieces of evidence.

Joseph W. Sheehan, Joseph W. Sheehan, P.C., Fairbanks, for appellant.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal raises the question whether a third party claimant has a cause of action against a tortfeasor's insurer for failure to promptly settle a claim. O.K. Lumber Company, Inc. asserts three theories of relief based on its prior dealings with Providence Washington: (1) breach of the common law duty of good faith and fair dealing; (2) violation of the Unfair Claim Settlement Practices Act, AS 21.36.125; and (3) violation of the Unfair Trade Practices and Consumer Protection Act, AS 45.50.-471–.561.

### I. FACTUAL AND PROCEDURAL BACKGROUND

O.K. Lumber Company, Inc. (O.K. Lumber) operates a building supply store in Fairbanks. In prior litigation it asserted two claims against liability insurance policies issued by Providence Washington Insurance Company to third parties.

The first claim arose when O.K. Lumber's truss plant burned to the ground. The fire was caused by drilling activity by Arctic Foundations, which was insured by Providence Washington. O.K. Lumber submitted a claim exceeding $2.5 million. The case went to trial and resulted in a verdict in favor of O.K. Lumber for nearly $1.8 million.[1]

---

1. Of the $1.8 million verdict, Providence Washington had already reimbursed O.K. Lumber's insurer $985,000 and made an offer of judgment for $500,000; thus, the verdict exceeded Prov-

The second claim arose from a traffic accident. A tractor trailer rig collided with a pick up truck owned by O.K. Lumber. Providence Washington insured the owner and operator of the tractor trailer. Despite its own adjuster's advice to pay the entire claim, Providence Washington refused to pay more than half. O.K. Lumber filed suit, and Providence Washington eventually paid the entire $6,000 claim.

In the instant case, O.K. Lumber seeks general, special and punitive damages based on the manner in which Providence Washington handled the two prior claims. Providence Washington moved for summary judgment on the ground that the complaint failed to state a claim upon which relief could be granted. Superior Court Judge James R. Blair granted Providence Washington's motion for summary judgment and awarded Providence Washington $25,000 attorney's fees.

■■■ This appeal followed. For the reasons set forth below, we affirm the decision of the superior court.[2]

## II. COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

O.K. Lumber argues that it may sue Providence Washington for breach of the implied covenant of good faith and fair dealing. Providence Washington contends that its duty of good faith runs only to its insured; therefore, a third party claimant has no cause of action for violation of the covenant.

■■■ The fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing. *Alyeska Pipeline Serv. Co. v. H.C. Price Co.*, 694 P.2d 782, 788 (Alaska 1985); *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979). Thus, an insurer has an obligation to investigate claims and to inform the insured of all settlement offers

and the possibility of excess recovery by the injured claimant. *Kranzush v. Badger State Mut. Casualty Co.*, 103 Wis.2d 56, 307 N.W.2d 256, 259 (Wis.1981). The insured may sue for damages caused by the insurer's breach of its duty. *Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281 (Alaska 1980); *Guin*, 591 P.2d at 1291.

■■■ The insured's cause of action for breach of the implied covenant is assignable to the injured third party claimant. *See Afcan v. Mutual Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 643, 647 (Alaska 1979). Moreover, the third party claimant has a cause of action against an insurer that perpetrates an independent tort against it. *See Bayless & Roberts*, 608 P.2d at 287–88 (although an insurance agent has no duty of good faith and fair dealing, the agent is subject to liability to the insured for independent torts). However, we have never addressed the question whether the insurer's duty of good faith and fair dealing benefits anyone other than the named insured.

■■■ O.K. Lumber argues that a third party claimant may sue for breach of this covenant, either because it is a third party beneficiary of the covenant or because public policy so dictates. We disagree.

Several courts in other jurisdictions have refused to permit a third party claimant to sue for breach of the duty of good faith and fair dealing. For example, in *Auclair v. Nationwide Mutual Insurance Co.*, 505 A.2d 431, 431 (R.I.1986) (per curiam) (citation omitted), the court ruled that the duty of good faith and fair dealing benefits only the insured and does not give rise to a cause of action in favor of a third party claimant:

> The granting of summary judgment was correct, since there is no duty on the part of an insurance carrier for a third party to settle promptly with a claimant. The

---

idence Washington's total proposed settlement package by $315,000.

The final judgment, including costs and attorney's fees, was almost $2.2 million.

**2.** In reviewing the propriety of a summary judgment, we must view the facts in the light most

favorable to the non-moving party. *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984). Summary judgment is upheld if the evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Alaska R.Civ.P. 56(c).

relationship between the claimant and an insurance carrier for a third party alleged to be liable is an adversary relationship giving rise to no fiduciary obligation on the part of such insurance carrier to the claimant. Any obligation to deal with settlement offers in good faith runs only to the insured.

*Accord Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937, 132 Cal.Rptr. 424, 426–29, 553 P.2d 584, 586–89 (Cal.1976); *Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 684–85, 393 N.E.2d 718, 720–21 (1979); *Kranzush*, 307 N.W.2d at 259–65.

We agree with these authorities. While liability insurance is intended to benefit one who is injured under circumstances giving rise to liability, it does not follow that the contractual duties owed by the insurer to the insured can be equated with the obligations owed to the injured claimant. An insurer could hardly have a fiduciary relationship both with the insured and a claimant because the interests of the two are often conflicting.

We conclude that an injured claimant may not sue an insurer for breach of the duty of good faith and fair dealing. The duty is a product of the fiduciary relationship created by the contract between the insurer and its insured. Moreover, we decline to recognize a tort duty of good faith

and fair dealing independent of the contractual relationship.[3]

### III. UNFAIR CLAIM SETTLEMENT PRACTICES ACT

O.K. Lumber argues that Providence Washington violated the Unfair Claim Settlement Practices Act, AS 21.36.125, and that the statute impliedly creates a private cause of action for a third party claimant for damages arising from the insurer's violation of the act. Providence Washington contends that the statute is enforceable only by the commissioner of insurance or the attorney general.

Chapter 36 of title 21 governs trade practices and frauds in the insurance industry. The purpose of chapter 36 is to "regulate trade practices in the business of insurance" by defining and prohibiting "unfair methods of competition or unfair or deceptive acts or practices." AS 21.36.010. The Unfair Claim Settlement Practices Act prohibits an insurer from too frequently engaging in certain acts and practices. AS 21.36.125.[4]

The director of insurance[5] has authority to enforce chapter 36. AS 21.06.080. The director may conduct an investigation, institute proceedings, issue a stop order, impose a penalty, or revoke a license. AS 21.36.320. The director may also seek injunctive relief. AS 21.36.330. In addition,

**3.** *See ARCO Alaska v. Akers*, 753 P.2d 1150, 1153–54 (Alaska 1988) (Mere breach of the implied covenant of good faith and fair dealing, however, does not constitute a tort).

**4.** AS 21.36.125 provides in part:
A person may not commit or engage in with such frequency as to indicate a practice any of the following acts or practices:
. . . .
(2) fail to acknowledge and act promptly upon communications regarding a claim arising under an insurance policy;
(3) fail to adopt and implement *reasonable* standards for prompt investigation of claims;
(4) refuse to pay a claim without a reasonable investigation of all of the available information and an explanation of the basis for *denial of the claim or for an offer of compromise* settlement;
. . . .
(6) fail to attempt in good faith to make prompt and equitable settlement of claims in which *liability is reasonably clear;*

(7) compel insureds to litigate for recovery of amounts due under insurance policies by offering substantially less than the amounts ultimately recovered in actions brought by those insureds;
. . . .
(10) make a claims payment without including a statement of the coverage under which the payment is made;
. . . .
(13) fail to promptly settle claims under one portion of a policy for the purpose of influencing settlements under other portions of the policy;
(14) fail to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. . . .

**5.** The director heads the division of insurance within the Department of Commerce and Economic Development. AS 21.06.010.

violation of a provision of title 21 or regulations promulgated thereunder constitutes a "fraudulent insurance act" and a class B misdemeanor. AS 21.36.360(p), (q)(8).

The statute nowhere provides that a third party claimant has a private cause of action against the insurer for violation of the Unfair Claim Settlement Practices Act. Thus, the question before us is whether the statute contains such an implied private right of action.[6]

In our view, there is much in the statute which suggests that the legislature did not intend to create a private right of action for damages. The statute prohibits acts committed so frequently as to become a trade practice; it does not readily lend itself to enforcement by a private cause of action arising from a single claim. *Accord Kranzush*, 307 N.W.2d at 268–69. Further, remedies for violations are set forth specifically and in detail, giving rise to an implication of exclusivity. *Accord Earth Sciences*, 619 F.Supp. at 1471; *Trimble*, 658 P.2d at 1378. Moreover, the list of acts prohibited is extensive, some violations

may be relatively minor,[7] and the standards for determining whether a prohibited act has been committed are often imprecise.[8] These characteristics are balanced by the relatively modest monetary sanctions imposed for statutory violations.[9] These limited sanctions stand in stark contrast to the potential compensatory and punitive damage awards which would be available in a private damage action.[10]

Thus, although we acknowledge that the statute was enacted to benefit both insureds and third party claimants, and that implying a private cause of action could have the effect of deterring conduct which the statute seeks to deter, implying the private right of action here asserted nonetheless seems inconsistent with the statutory scheme. Allowing such damage actions would tend to upset the implicit legislative judgment that the broad proscriptions of the act are tolerable because of the limited sanctions imposed when violations occur. We therefore conclude that a third party claimant has no cause of action against an insurer under AS 21.36.125.

6. Other courts have faced this issue, with mixed results. It is difficult to generalize about the cases, because the statutes and regulations vary considerably from state to state. Courts construing California, Montana, North Dakota, and West Virginia law have ruled that those versions of the Unfair Claim Settlement Practices Act create a private right of action in insureds and third party claimants. *Farmers Union Cent. Exch. v. Reliance Ins. Co.*, 626 F.Supp. 583, 589–90 (D.N.D.1985); *Royal Globe Ins. Co. v. Superior Court*, 592 P.2d 329, 332–35 (Cal.1979); *Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065, 1067 (1983); *Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252, 254–60 (1981). The statutes in Arizona and Connecticut have been construed to create a cause of action for insureds, but the rights of third party claimants have not been addressed. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, 1138 (1982); *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, 442 A.2d 920, 925–26 (1982). Courts construing Illinois, Nevada and Wisconsin law have refused to imply a statutory right of action in favor of third party claimants, although they have not yet addressed the question whether an insured may maintain a statutory claim. *Tweet v. Webster*, 614 F.Supp. 1190 (D.Nev.1985); *Scroggins*, 30 Ill. Dec. at 685–86, 393 N.E.2d at 721–22; *Kranzush*, 307 N.W.2d at 265–68. Finally, in Colorado, Kansas and Minnesota, neither insureds nor

third party claimants have a private cause of action for damages. *Earth Sciences v. United States Fidelity & Guar. Co.*, 619 F.Supp. 1465, 1468–71 (D.Kan.1985); *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370, 1377–78 (Colo.App. 1982); *Morris v. American Family Mut. Ins. Co.*, 386 N.W.2d 233, 236–38 (Minn.1986).

7. *E.g.*, failure to adopt reasonable standards for prompt claim investigation, AS 21.36.125(3); failure to promptly answer letters, AS 21.36.-125(2); and paying a claim without stating the coverage under which it is paid, AS 21.36.-125(10).

8. *E.g.*, failure to "promptly provide a reasonable explanation" for denying a claim or refusing an offer of compromise, AS 21.36.125(14).

9. An insurer may be fined $1,000 for each prohibited act or $10,000 for engaging in a prohibited practice. AS 21.36.320(d). Increased fines are available if the insurer knew or should have known that it was acting in violation of the act. AS 21.36.320(e).

10. For example, in the instant case O.K. Lumber seeks compensatory damages for mental stress and anguish, financial instability, jeopardized credit relationships, loss of business, loss of income, and loss of property, as well as punitive damages.

## IV. UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

O.K. Lumber argues that the Consumer Protection Act, AS 45.50.471–.561, creates a private cause of action against insurers. Providence Washington contends that the act does not apply to the insurance industry.

The Consumer Protection Act expressly creates a private cause of action for a person who purchases goods or services and is injured by a practice declared unlawful in AS 45.50.471. AS 45.50.531. However, the act also expressly exempts acts regulated by chapter 36 of title 21. AS 45.50.481(3).

We conclude that O.K. Lumber has no cause of action under the Consumer Protection Act due to the express exemption for the insurance industry found in AS 45.50.-481(3).

## V. ATTORNEY'S FEES

O.K. Lumber argues that the superior court abused its discretion by awarding excessive attorney's fees. Specifically, O.K. Lumber contends that the court should have excluded attorney time for (1) a petition for review that was dismissed by stipulation, (2) opposing a motion to compel discovery, and (3) communicating among counsel.

When no money judgment is recovered, the superior court may award the prevailing party partial attorney's fees in a reasonable amount. *Atlantic Richfield Co. v. State, Dep't of Revenue,* 723 P.2d 1249, 1251–52 (Alaska 1986); Alaska R.Civ. P. 82(a)(1). We will reverse an award of attorney's fees only if the court abused its discretion by compensating excessive attorney hours or awarding an overly high percentage of an otherwise reasonable fee. *See Atlantic Richfield,* 723 P.2d at 1252 n. 6; *AMFAC Hotels & Resorts v. State, Dep't of Transp. & Pub. Facilities,* 659 P.2d 1189, 1194 (Alaska 1983).

According to Providence Washington, its attorneys worked a total of 653.7 hours at a value of $77,703. Of that time, O.K. Lumber asserts that 160.7 hours, representing $19,432.50, was spent on the petition; 25 hours on discovery matters; and 44.9 hours on intra-office communication. The remaining hours were spent on other matters.

Assuming that Providence Washington is not entitled to attorney's fees generated by the petition, discovery issues, or intra-office communication, Providence Washington has still documented 423.1 attorney hours. The award of $25,000 represents roughly sixty dollars per hour.[11] We are not persuaded that the superior court abused its broad discretion.

The decision of the superior court is AFFIRMED.

---

11. The attorneys who participated in the case billed at an hourly rate of $90.00–125.00.