Georgios MANOLAKAKIS, Plaintiff,

v.

The INSURANCE CORPORATION OF NEW YORK, Defendant.

No. F99–0034CV(JKS).

United States District Court, D. Alaska.

Nov. 10, 2005.

---

## ORDER

SINGLETON, District Judge.

Bilial Selmani owns and operates taxicabs in Bethel, Alaska. Selmani employed Georgios Manolakakis to drive one of his cabs. Selmani purchased a policy of liability insurance from the Insurance Corporation of New York ("ICNY"). The policy provided $50,000 per person and $100,000 per accident uninsured motorist ("UM") and under insured motorist ("UIM") coverage to drivers and passengers in insured vehicles. Manolakakis was seriously injured by an under insured motorist. He was paid the policy limits. He brings this action seeking to reform the ICNY policy to increase the policy limits. Manolakakis relies upon AS 21.89.020(c), (d) and (e).

## I. STANDING

■ ICNY argues that Manolakakis lacks standing to bring this action.[1] ICNY

---

1. Of course, it is possible to look at the alleged wrong as merely ICNY charging Selmani an illegal premium, but that is only part of the problem. It is wiser to view the claim, by reference to AS 21.89.020(c), as asserting that ICNY misrepresented the allowable premium for the coverage Selmani wanted. The "in- formation" should therefore be reformed to provide accurate information regarding premium costs for various optional UM and UIM coverages. Assuming that this claim is viable, an issue to be addressed hereafter, Manolakakis as a third party beneficiary of the coverage actually obtained should be permitted to

reasons that Selmani purchased the insurance and only he has standing to assert rights in a private action under it. *See, e.g., Peter v. Schumacher Enters., Inc.*, 22 P.3d 481 (Alaska 2001) (discussing private right of action to enforce rights under AS 21.89.020(c) and (d)). There is no Alaska case directly on point discussing the right of an additional insured to sue to reform a liability insurance policy for statutory violations regarding offering UM and UIM coverage. The cases from other jurisdictions are in conflict. *See, e.g., Starr v. Nationwide Mut. Ins. Co.*, 548 A.2d 22 (Del.Ch.1988) (holding that only the named insured who purchased the policy is entitled to seek reformation); *Fla. Int'l Indem. Co. v. City of Metter*, 952 F.2d 1297 (11th Cir.1992) (certifying issue to Georgia Supreme Court); *Nat'l Am. Ins. Co. of Neb., Inc. v. Cont'l W. Ins. Co.*, 243 Neb. 766, 502 N.W.2d 817 (1993). It seems to this Court that Manolakakis was more than an incidental beneficiary of the policy, and assuming that he was an intended beneficiary of the UM and UIM coverage, the Court predicts based on the reasoning of *Peter* that the Alaska Supreme Court would find that Manolakakis would have standing to litigate Selmani's rights under AS 28.89.020(c), et seq. In part this is because the Court views the gravamen of the claim to be that but for a misrepresentation regarding the premium to be charged, Selmani would have purchased greater coverage and Manolakakis would have been an intended beneficiary of that increased coverage.

## II. REFORMATION

Manolakakis does not contend that ICNY did not satisfy the letter of the statute. Selmani was offered UM and UIM coverage in the amounts specified in the statute and elected to purchase the lowest limits. He specifically rejected UM and UIM coverage for property damage. Manolakakis argues, however, that ICNY did not accurately inform Selmani of the premium to be paid. It appears that ICNY offered UM and UIM insurance to Selmani for bodily injury alone at a rate previously approved for both bodily injury and property damage together at a rate of $800. ICNY had sought but not achieved approval of the changed premium. Manolakakis argues that in effect ICNY overcharged Selmani for the coverage he received and had he been told that he could have more insurance for the same premium he would have taken it.

█ ICNY argues that this argument is foreclosed by *Government Employees Ins. Co. v. Graham–Gonzalez*, 107 P.3d 279 (Alaska 2005) ("GEICO"). In GEICO the trial court held that compliance with AS 21.89.020(c) required the insurer to offer the insured the full spectrum of available UM and UIM coverage and provide in addition the premium costs for basic insurance and the various optional coverages available. On appeal the Supreme Court disagreed and reversed holding that compliance with AS 21.89.020(c) required the insurer to inform the potential insured of the coverages available but not necessarily the premium at which optional insurance could be obtained. From this ICNY reasons that the premium amount is irrelevant to an action based upon AS 21.89.020(c). The Court is not convinced. It is one thing to say nothing, it is another to actively mislead. Here it is conceded

assert it. It seems a misinterpretation of the issue to argue that all Selmani was denied was property coverage he did not want and so therefore the policy should be reformed to include property coverage but only at the instance of Selmani. While this is one possibility, it is also at least possible that Selmani, provided accurate information about premiums, would not have purchased property coverage, but would instead have increased UM and UIM bodily injury coverage to the ultimate benefit of Manolakakis.

that Selmani was offered insurance at a premium the company could not legally charge at the time the offer was made. In a real sense the company misrepresented the cost of basic insurance and implicitly misrepresented increased insurance, which a reasonable person would assume would cost at least more than basic insurance. In *Peter*, 22 P.3d 481, the court addressed an analogous situation, holding that an insurance agent did not owe a duty to prospective insured's seeking coverage to give insurance advice but would be liable if a special relationship existed and offered as one example of a special relationship a case where the agent misrepresented facts about coverage. The Court concludes therefore that Manolakakis may stand in Selmani's shoes as a third party intended beneficiary of the contract of insurance and is entitled to assert Selmani's right to a remedy for what this Court determines is best characterized as a misrepresentation of the premium ICNY was permitted to charge for the insurance furnished.

## III. REMEDY

█ It seems that the appropriate remedy is a variation of the one suggested by Justices Bryner and Fabe in GEICO. 107 P.3d at 289–90. Manolakakis should be given the opportunity to convince a jury that had Selmani been informed of the true premium cost he would have purchased increased UM and UIM coverage.[2] While ICNY has come forward with substantial evidence that Selmani would not have purchased increased coverage, that evidence should be submitted to a jury. See *Peter*, 22 P.3d at 491–92 (noting that despite speculation involved in determining what an insured would have done had he

been given proper information, jury should be allowed to consider the issue).

## IV. OTHER ISSUES

Manolakakis argues that ICNY violated the "mirror rule" whereby UM and UIM coverage must mirror liability coverage. In this case Selmani had $100,000 per person and $300,000 per accident liability insurance but only $50,000 per person and $100,000 per accident UM and UIM insurance. This argument is only presented in passing and needs further development before the Court will be prepared to rule.

█ Manolakakis states that he is suing for breach of contract (presumably as an intended third party beneficiary of the contract of insurance), and not tort. Nevertheless, he contends that he should be permitted to state a claim for breach of the covenant of good faith and fair dealing, i.e. bad faith. While the covenant is a contract concept imported from the UCC, in insurance law the Supreme Court allows it to be asserted as a tort claim so that the plaintiff may recover tort damages. It is not necessary to determine which claim Manolakakis is bringing, since viewed either as a tort or as a breach of contract, the claim should be limited to Selmani as the named insured. *O.K. Lumber Co. v. Providence WA Ins. Co.*, 759 P.2d 523 (Alaska 1988). Manolakakis occupies a middle position between the named insured who may sue in tort or contract for breach of the covenant and an injured third party seeking damages from the insured. Manolakakis is an additional insured. However, the policies articulated by the Supreme Court of Alaska for not allowing injured parties, i.e. incidental beneficiaries, to sue on such a claim apply

---

**2.** I depart from Justices Bryner and Fabe on this point. Traditionally the burden of persuasion is put on the party having the best access to the information. Manolakakis is in a better position to present Selmani's intentions than ICNY and he would be proving an affirmative, while ICNY would have to prove a negative.

equally to intended beneficiaries. In neither case does the plaintiff negotiate with the insurer regarding the components of insurance. In any event, given the Court's resolution of the reformation issue, it appears any contract claim for breach of the covenant of good faith and fair dealing would collapse into the reformation remedy.

**IT IS THEREFORE ORDERED:**

Manolakakis's motion for partial summary judgment at **Docket No. 74** is **GRANTED IN PART**. He is entitled to assert Selmani's right to a reformation of the policy if, but only if, he can prove that given proper information regarding premium Selmani would have increased UM and UIM coverage. The Court grants summary judgment against Manolakakis on a separate claim for breach of the covenant of good faith and fair dealing. Except as provided herein, ICNY's motion for summary judgment at **Docket No. 72** is **DENIED**.