MAASSEN, Justice,
with whom FABE, Justice, joins, dissenting.
I dissent. While I agree with the court’s observation that a liability insurer can assume a “new and independent” duty to a third party claimant while adjusting a claim, as we recognized in O.K. Lumber v. Providence Washington Insurance Co.,[1] there is nothing in this case on which to find that such a duty was ever assumed. The plaintiffs allegations, taken as true, simply show an insurer acting—reasonably or otherwise—in the course of its contractual duty to minimize its insured’s exposure to liability. Allowing the possibility of a “new and independent” duty on these facts expands the law in a direction it does not need to go, and it is likely to unnecessarily complicate insurer-defended cases in the future.
As is evident from the court’s factual summary, all the actions GEICO allegedly took that delayed the cleanup and exacerbated Charles Burnett’s harm occurred between November 2011, when the accident occurred, and 2014, when Burnett released the insured driver “[ajfter the fuel cleanup was complete.”[2] During that entire time—from notice of the claim through settlement and release—GEICO indisputably had a fiduciary duty, based on contract, to act in the best interests of its insured by investigating Burnett’s claim and then either settling or defending against it.[3] GEICO had no coexistent duty to Burnett in either contract or tort that compelled it to address his damages. When it allegedly assumed responsibility for the cleanup and directed Burnett to stand aside, GEICO was acting in the pursuance of its duty to its insured.
The court today finds genuine issue of material fact about whether a new and different duty arose in GEICO’s alleged assurances to Burnett that it would clean up the spill, Burnett’s alleged reliance on those assurances, and an alleged increase in harm to the property due to “[GEICO’s] inaction.”[4] “But the question of duty is a matter of law.”[5] We can—and as a reviewing court we should—assume that Burnett’s factual allegations are true and decide whether the circumstances as alleged created an “independent duty to act.”
I do not believe they did. This is not a case in which the insurer seeks “to foist onto its insured the entire legal responsibility for its actions when the liability does not stem from the insured’s acts,” as the court today de *34 scribes the wrong it seeks to avoid.[6] The general rule in Alaska, is and long has been that “a plaintiff may not sue. a tortfeasor’s insurance company directly.”[7] This usually means that the claimant cannot recover directly from the insurer damages that the law allows him to recover from the insured tort-feasor. If GEICO did drag its feet and unreasonably allow Burnett’s damage to accumulate, Burnett’s claim for the increased harm is still against the original tortfeasor, GEI-CO’s insured.[8] It is the insured who caused Burnett’s harm, even as the harm increases after the accident; GEICO’s duty to step in and address it is owed to its insured. To the extent GEICO’s conduct exposes its insured to liability above the limits of his insurance coverage, the insured is still liable to Burnett for all the damages proximately caused by the accident; the excess is an issue between the insured and GEICO, which may be liable to the insured for the excess if its delay in the cleanup was indeed unreasonable.[9]
What does it mean if the law is otherwise? If GEICO is liable to Burnett for its failures during cleanup based on breaches of an “independent duty to act,” does that mean that the insured tortfeasor is not liable for the same harm? Or are they jointly liable? And does this mean that if Burnett had sued only GEICO’s insured, the insured would be well advised to file a thhd party claim himself against GEICO as a potential joint tortfeasor to whom liability must be apportioned? A prudent defense lawyer might well think so. Needless to say, today’s decision complicates the relationship between insurer and insured by giving the insured defendant—-usually represented by insurer-appointed counsel—a strong incentive to join the insurer as a co-defendant, alleging that it failed in some way to timely address the claimant’s harm while the claimant was justifiably relying on the insurer to do so.
My primary concern with today’s decision is the lack of a limiting principle. In the course of their duties to their insureds, liability insurers regularly assume responsibility for scheduling, paying for, or directing some kind of damage-control, measures. Say an auto insurer promises the claimant that the tortfeasor’s medical payments coverage will pay for the claimant’s necessary medical care. The insurer asserts that certain palliative care is unnecessary and refuses to pay for it; the claimant alleges that this decision caused his pain to continue longer than it otherwise would have. Does the claimant now have a direct tort action against the insurer under Restatement § 343 in addition to his claim against the insured?
Such may well be the result under Howton v. State Farm Mutual Automobile Insurance Co.,[10] the case on which the opinion primarily relies.[11] But I find Howton’s dissent more convincing; three justices considered the existing law—which already allowed the claimant to sue the tortfeasor’s insurer for harms “for which the insured is not liable”—to be sufficient for the claimant’s protection.[12] And the Oklahoma Supreme Court rejected the Howton rule in McWhirter v. Fire Insurance Exchange, Inc., clearly skeptical of the new duty’s origins:
We recognize one state court which has determined an insurance earner is no less liable under the law for breach of its own contract obligations or tortious conduct than any other party where the insurer *35 undertakes a new and independent obligation directly with a nonparty to the insurance contract in its efforts to negotiate a settlement of the party’s claim. However, the court did not explain where this new and independent obligation arises from. And, but for the insurance contract, there would be no reason for the insurance company to deal with the third party at all. We find the case unpersuasive and decline to apply its holding to our case.[13]
The Florida Court of Appeals felt the same way.[14] The Washington Court of Appeals followed Howton, but it did so in the narrow context of an “intentionally tortious act”: the insurer’s intentional misrepresentations about when settlement funds would be paid.[15] The court affirmed the dismissal of claims for violation of unfair claims settlement practices regulations, breach of the duty of good faith and fair dealing, and breach of contract.[16]
I conclude that, given the potential for conflicting duties that was at the heart of our decision in O.K. Lumber,[17] any “new and independent” duty to the claimant should be based on either (1) conduct or commitments by the insurer after the claims against the insured have been resolved (i.e., after the insurer has fully satisfied its fiduciary duty to the insured) or (2) a truly “new and independent” duty, that is, one not simultaneously owed to the insured by virtue of the insurance contract (i.e., a duty of reasonable care any actor would owe another—when driving, when holding a ladder, when lighting a match near a gas leak). Neither of these conditions exists when the claimant’s damages, proximately caused by the conduct of the tortfea-sor, increase due to insurer inaction while the insurer is acting in the course of its fiduciary duty to its insured. Because the “new and independent” duty the court recognizes today is essentially indistinguishable, either temporally or in substance, from the duty GEICO was pursuing on behalf of its insured, I would affirm the superior court’s grant of summary judgment to GEICO.

. "[T]he third party claimant has a cause of action against an insurer that perpetrates an independent tort against it." 759 P.2d 523, 525 (Alaska 1988) (citing Cont’l Ins. Co. v. Bayless &Roberts, Inc., 608 P.2d 281, 287-88 (Alaska 1980)); see Op. at 30.

. Op. at 28-29.

. O.K. Lumber, 759 P.2d at 525 ("The fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing. Thus, an insurer has an obligation to investigate claims....” (citations omitted)).

. Op. at 32.

. Hurn v. Greenway, 293 P.3d 480, 487 (Alaska 2013); see also Whitney v. State Farm Mut. Auto. Ins. Co., 258 P.3d 113, 116 (Alaska 2011) ("If there are no genuine disputes of material fact, the existence and scope of a legal duty are questions of law which we review de novo.”).

. Op. at 30.

. Hamilton v. Blackman, 915 P.2d 1210, 1216 (Alaska 1996) (first citing Evron v. Gilo, 777 P.2d 182, 187-88 (Alaska 1989); then citing Severson v. Estate of Severson, 627 P.2d 649, 651 (Alaska 1981); and then citing William L. Prosser & W. Page Keeton, the Law of Torts § 82, at 586 (5th ed. 1984)).

. Indeed, the damages alleged in Burnett's complaint are all attributable to the original spill and the fact that they continued to accumulate. Burnett's complaint against GEICO is not that it caused him a new and different harm, only that it allowed the harm caused by its insured to continue longer than it reasonably should have.

. See Jackson v. Am. Equity Ins. Co., 90 P.3d 136, 142 (Alaska 2004) ("Breach of the covenant of good faith and fair dealing exposes the insurer to a claim of bad faith and may expose it to liability for any excess judgment against its insured.”).

. 507 So.2d 448 (Ala. 1987).

. Op. at 30-31.

. Howton, 507 So.2d at 451 (Steagall, J., dissenting).

. 878 P.2d 1056, 1059 (Okla. 1994) (emphasis in original).

. Hazen v. Allstate Ins. Co., 952 So.2d 531, 539 (Fla. App. 2007) ("[W]e think the reasoning on this point in Howton is unsound.”).

. Dussault ex rel. Walker-Van Buren v. Am. Int'l Grp., Inc., 123 Wash.App. 863, 99 P.3d 1256, 1261 (2004).

. Id. at 1259-60.

. 759 P.2d 523, 525-26 (Alaska 1988).